**Billie G. JAMES, Plaintiff Below, Appellant,**

v.

**Herman GLAZER and Molly B. Glazer, Individually and doing business as Lea Boulevard Apartments/Southgate Gardens, Defendants Below, Appellee.**

Supreme Court of Delaware.

Submitted: Dec. 12, 1989.
Decided: Feb. 6, 1990.

Edmund D. Lyons, Jr. of Aerenson, Ferrara & Lyons, Wilmington, for appellant.

John Vincent Alexander of Young, Conaway, Stargatt & Taylor, Wilmington, for appellee.

Before CHRISTIE, C.J., MOORE and HOLLAND, JJ.

HOLLAND, Justice:

This appeal involves a personal injury action brought in the Superior Court by the plaintiff-appellant, Billie G. James ("James"), against the defendants-appellees, Herman Glazer and his wife, Molly P. Glazer ("the Glazers"). This action relates to a "slip-and-fall" by James on icy pavement in front of her apartment building. At the time of the injury, James was a tenant in the Lea Boulevard Apartments complex, owned by the Glazers.

James alleged that the icy conditions which caused her to fall resulted from the negligence of the Glazers' agent, Ray Livingston ("Livingston"), the resident manager of the Lea Boulevard Apartments. Following a jury verdict for the Glazers, James moved for a new trial. The Superior Court denied the motion. James has ap-

pealed from the jury's verdict and the denial of her motion for a new trial.

James has raised three issues on appeal.[1] First, James contends that the trial judge's decision to instruct the jury on the affirmative defense of contributory negligence was erroneous and contrary to Superior Court Civil Rule 8(c), since the Glazers did not raise it in their pleadings. Second, James contends that evidence concerning her receipt of disability income was improperly submitted to the jury, because it constituted inadmissible evidence of payment from a collateral source. Third, James contends that her motion for a new trial should have been granted, because the jury's verdict in favor of the Glazers was against the weight of the evidence. We have concluded that none of James' contentions are meritorious.

### Facts

James shared an apartment with Lucien Sawyer ("Sawyer") in building 600 of the Lea Boulevard Apartments complex.[2] On the morning of December 28, 1983, Sawyer's daughter, Mona Sawyer ("Mona")[3] planned to drive James to a hairdresser's appointment. Mona and James left the apartment building together between 9:00 a.m. and 9:25 a.m. James exited first and immediately slipped on an icy cement porch outside of the apartment building's entrance door.[4] As a result of the fall, James reinjured her back.[5]

After her fall, Mona and Sawyer helped James back into her apartment. Sawyer immediately called the physician who had been treating James for her back problems. Sawyer then took James to the St. Francis Hospital. Prior to leaving for the hospital, Sawyer testified that he called Livingston to report James' accident.[6]

Livingston had been outside of his apartment building earlier on the morning of December 28, 1983. He had gone to a separate building on a tenant service call. According to Livingston, he returned to his building between 8:00 a.m. and 8:30 a.m. He testified that while returning from the service call, he had noticed a light rain, but had not noticed it freezing on the sidewalks. He also testified that approximately thirty minutes elapsed from the time he noticed that it had begun raining to the time that Sawyer notified him of James' fall.[7]

At trial, James contended that the weather pattern during December, 1983, was one of the coldest on record. James argued that while Livingston was outside on the morning of December 28, he should have realized the potential for the rain to freeze and should have salted the walkways.[8]

1. These same issues were also presented to the Superior Court in James' motion for a new trial.

2. The complex is comprised of six buildings numbered 600, 602, 604, 606, 608 and 610.

3. Mona was staying at the apartment with James and Sawyer as a visitor.

4. Building 600 had a cement porch with one step down from the door and another step down to the sidewalk.

5. James has a long medical history of back injuries. At the time of the accident, following a period of disability, James had recently been cleared to return to work as shift supervisor at the Ferris School for Boys on January 15, 1984, without restriction, by her attending physician. Prior to the accident which underlies this lawsuit, James had had three back operations. In 1981, Dr. Gopez operated on James to correct a ruptured disc. In 1983, she had an operation for a herniated disc and within two weeks of the second operation, she had a third operation to

remove scar tissue which had formed as a result of the second operation.

6. The trial testimony concerning how Sawyer reported the fall to Livingston varied. Sawyer testified that he called Livingston prior to leaving for the hospital. Livingston testified that Sawyer, instead, came over to his apartment to report the incident.

7. Livingston indicated that he normally began working at the complex at 8:30 a.m. On this particular occasion, however, after responding to the tenant problem in 610 and returning to his own apartment in building 608, Livingston testified that he "probably" finished his breakfast before starting to work again.

8. Part of Livingston's duties as resident manager included shovelling snow and applying salt or "Ice Melt" to the walkways. Livingston testified that in situations involving light icing, it would only have taken him between thirty minutes and two hours to put out an appropriate

Livingston testified that he answered the service call in his shirt sleeves and was, nevertheless, unaware that the outside temperature was below freezing.[9]

The witnesses disagreed about whether ice was visible at the time James fell. Mona testified that ice was visible on branches and hedges at the time of the fall. James testified that she saw no ice when leaving the apartment building. According to Sawyer, he only saw a thin film of ice on the porch, upon closer inspection, while trying to determine what had caused James to fall. Evidence was also presented by the Glazers' own meterorological expert that ice would not have been visible on walking surfaces until approximately 9:30 a.m.[10]

During the trial, on direct examination, James testified that following her fall, she stopped taking prescription drugs for her back primarily because she could no longer afford to buy them. On cross-examination, the Glazers elicited an acknowledgement from James that her level of income after the accident was greater than before the accident, due to the receipt of disability income. James' attorney objected to this line of questioning on the ground that it was inadmissible evidence of payment from a collateral source. The trial judge overruled James' objection. However, he did give a limiting instruction to the jury, which restricted the use of the collateral source evidence to James' credibility, and prohibited the use of that evidence by the jury to reduce James' claim for lost income.

At the close of their case, the Glazers requested that the trial judge include an instruction on the affirmative defense of contributory negligence in the charge to the jury. James' attorney objected on the basis that contributory negligence had not been raised as an affirmative defense by the Glazers, either in the original pleadings

or as an amended pleading. James' objection was overruled.

### Contributory Negligence

The first contention raised by James in this appeal is that the trial judge erred by instructing the jury on the issue of contributory negligence. James contends that the issue of contributory negligence was procedurally barred under Superior Court Civil Rule 8(c), since the Glazers did not raise it as an affirmative defense. The Glazers have conceded that they did not plead contributory negligence in their original answer to James' complaint or in an amended pleading.

▮ Contributory negligence is an affirmative defense. Generally, an affirmative defense must be pled or the defense is waived. *Tydings v. Loewenstein*, Del. Supr., 505 A.2d 443, 446 (1986); *City of Wilmington v. Spencer*, Del.Supr., 391 A.2d 199, 203 (1978); Super.Ct.Civ.Rule 8(c). Nevertheless, the Glazers argue that the issue of contributory negligence was properly submitted to the jury under either of two exceptions to the general rule of waiver.

The first exception occurs in factual situations where it is impossible to determine issues of the defendant's negligence and proximate cause without considering the actions of the plaintiff. In Delaware, this exception was recognized in *Garrod v. Good*, Del.Supr., 203 A.2d 112 (1964). The *Garrod* case involved an automobile accident which occurred at an intersection. One driver was injured and filed suit against the driver of the other automobile. The defendant's answer simply denied negligence and did not raise the contributory negligence of the plaintiff as an affirmative defense. This Court held that Superior

---

amount of Ice Melt on all the steps of every building in the apartment complex.

9. Livingston called the weather service later in the day and learned that the exact temperature at the time of the accident was 28 degrees Fahrenheit.

10. Dr. Joseph Sobel, testified that based on his review of historical weather records and data,

the rain began in the Lea Boulevard apartments area at approximately 8:30 a.m. and was a "freezing rain" which froze "immediately" upon impact because the temperature was below freezing. He further indicated that the "very thin film of ice" was so inconspicuous that it was virtually invisible and would have caused untreated surfaces to become dangerously slippery "within minutes" after the rain had begun.

Court Civil Rule 8(c) was not applicable in that factual scenario, since "it would be virtually impossible to determine the issues of [the] defendant's negligence and proximate cause without knowing the actions of the other driver." *Id.*, 203 A.2d at 114.[11]

A second exception to the general rule, that affirmative defenses are waived if not pled, has been recognized when evidence of an unpled affirmative defense is admitted without objection. Two Delaware cases have allowed the pleadings to be *impliedly* amended to include contributory negligence, when evidence of the plaintiff's negligence was admitted at trial without objection from the plaintiff. *Tydings v. Loewenstein*, 505 A.2d at 446; *Filliben v. Jackson*, Del.Supr., 247 A.2d 913, 914 (1968). The procedural results in those cases were the same as if contributory negligence had been added as an amendment to the pleadings under Superior Court Civil Rule 15(b). *Id.*

▮▮▮ Both of the recognized exceptions to the waiver rule appear to be applicable in this case. With respect to the first exception, in the context of this slip-and-fall case, the reasonableness of Livingston's conduct is inexorably related to the reasonableness of James' conduct. If the icy patches were too thin for James to notice, they were arguably not noticeable by Livingston either. With respect to the second exception, the issue of contributory negligence evidence was admitted without objection by James. It was raised, *inter alia,* during the direct examination of James' own witness, Mona:

Q: December 28th. Do you remember what it looked like after you heard Mrs. James call out and you went outside?

. . . .

A: Yes. It was like, you know, the main steps leading to the apartment door, the branches, like hedges on both sides had like icicles hanging from them.

Q: They had icicles? And how did the sidewalk look?

A: It was kind of icy out there. You could tell, it was icy. . . . so I looked around and I noticed ice on the tree. The most obvious ice was on the branches on each side because there was [sic] icicles hanging from them.

With evidence in the record that ice could be seen, from the person who was with James when she fell, James' conduct in response to the icy conditions was at issue. *See Leedom v. Pennsylvania R. Co.*, Del. Super., 29 A.2d 171, 173–74 (1942).

There can be no doubt that contributory negligence is always best placed into issue either through the original pleadings or by an amendment to the pleadings under Superior Court Civil Rule 15(b). A party who requests an instruction on that doctrine, in the absence of taking either step, does so at their peril. Nevertheless, even though contributory negligence was not presented in the pleadings in this case, it was always at issue. Therefore, under either of the recognized exceptions, the trial judge's decision to instruct the jury on the issue of contributory negligence was not an abuse of discretion and did not constitute reversible error. *Tydings v. Loewenstein*, 505 A.2d at 446; *Garrod v. Good*, 203 A.2d at 114.

### *Collateral Source Evidence*

The second issue raised in this appeal relates to the admission of evidence concerning the disability benefits which James received, while she was out of work, following the accident. The Glazers were permitted to elicit testimony from James, during cross-examination, that her total income after the fall was greater than her income before the fall. James contends that such evidence should have been inadmissible under the collateral source rule. James also contends that the limiting instruction given by the trial judge, in response to her objection, was insufficient to cure the alleged error. Therefore, James argues that she is entitled to a new trial.

---

**11.** In *Garrod,* this Court did not base its decision on the exception to Rule 8(c) which it recognized, since the trial court allowed an amendment to the pleadings. 203 A.2d at 114.

■ The collateral source rule prohibits the admission of evidence of an injured party receiving compensation or payments for tort-related injuries from a source other than the tortfeasor. This doctrine was first recognized in Delaware in *Yarrington v. Thornburg,* Del.Supr., 205 A.2d 1, 2 (1964). It "is predicated upon the theory that a tortfeasor has no interest in, and therefore no right to benefit from, monies received by the injured person from sources unconnected with the defendant." *Id.* However, another rationale behind the collateral source doctrine is a concern for prejudice that may result to an injured party in the minds of the jury from knowledge of any "double recovery." *See Tipton v. Socony Mobil Oil Co., Inc.,* 375 U.S. 34, 35–36, 84 S.Ct. 1, 2, 11 L.Ed.2d 4 (1963) (evidence of collateral benefits is readily subject to misuse by a jury); Annotation, *Admissibility of Evidence that Injured Plaintiff Received Benefits from a Collateral Source, on Issue of Malingering or Motivation to Extend Period of Disability,* 47 A.L.R.3d 234, 238–39 (1973 & Supp. 1989) (listing motives behind collateral source rule) [hereinafter Annotation].

Even though collateral source evidence is generally inadmissible, an exception to the inadmissibility of evidence concerning payments from a collateral source has evolved when the injured party raises the issue during his or her own direct examination. In such situations, the courts in other jurisdictions have generally held that any possible prejudice to the injured party, in the minds of the jury, is outweighed by the desire for effective cross-examination and impeachment. *See Gladden v. P. Henderson & Co.,* 385 F.2d 480 (3d Cir. 1967).[12] The exception recognized in *Gladden* allows evidence of payments from a collateral source to be admitted for the limited purpose of attacking the credibility of a witness, by impeaching statements made during direct examination.

In *Gladden v. P. Henderson & Co.,* plaintiff testified that he had returned to work and ceased medical treatment because he had fallen behind in the payment of his bills and he wanted to support his family. The trial judge permitted the defendant to challenge plaintiff's credibility by inquiring into plaintiff's receipt of funds from collateral sources. On appeal, the Third Circuit noted the general rule excluding collateral sources from evidence. However, the court ruled that where the plaintiff had injected the affirmative element of his reduced financial circumstances as a reason for his behaving inconsistently with his claimed injury, the defendant was

> not required to leave this testimony unchallenged and had the right to ask plaintiff on cross-examination whether he had received financial assistance, as affecting the credibility of his assertion. To have forbidden such cross-examination would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity from inquiry on cross-examination.... The barriers which had been created against the admission of otherwise relevant evidence because of its prejudicial effect do not extend to the affirmative volunteering by a plaintiff of testimony which breaks into this restricted area.

> . . . .

The trial court therefore was justified in opening the door for cross-examination

12. *Accord Hannah v. Haskins,* 612 F.2d 373, 375 (8th Cir.1980) ("The scope of the permissible inquiry is thus set by the direct examination and the usual rules on cross-examination apply."); *Sheehy v. Southern Pac. Transp. Co.,* 631 F.2d 649, 652 (9th Cir.1980) (a plaintiff may "open the door" by testimony on direct examination); *Busbee v. Sule,* 603 F.2d 1197, 1199–1200 (5th Cir.1979); *Evans v. Wilson,* 279 Ark. 224, 650 S.W.2d 569, 570 (1983) (noting one of the exceptions to the collateral source doctrine is the *Gladden* situation where the evidence is used to rebut direct testimony); *Acampora v. Ledewitz,* 159 Conn. 377, 269 A.2d 288, 292 (1970) (third party payment of doctor bills is generally inadmissible but permitted where evidence was raised during direct testimony of plaintiff's witness); *Bartosch v. Lewison,* 413 N.W.2d 530, 533 (Minn.Ct.App.1987) (agrees with the so-called "open-the-door" exception to the collateral source rule for narrow purpose of attacking witness' credibility after assertion on direct examination); *Johnson v. Reed,* 464 S.W.2d 689, 693 (Tex.Civ.App.1971), *cert. denied,* 405 U.S. 981, 92 S.Ct. 1197, 31 L.Ed.2d 256 (1972).

for the narrow purpose of testing the credibility of the plaintiffs assertion.

385 F.2d 480, 483–84 (footnote omitted).

The Glazers argue that the same rationale expressed in *Gladden* as justification for admitting evidence of collateral payments applies to the case *sub judice.* We agree. The record reflects that the Glazers established a proper foundation to invoke the *Gladden* exception to the prohibition against introducing evidence of collateral payments received by James. Nevertheless, that does not end the evidentiary analysis.

■ Evidence which is inadmissible for one purpose may be admissible for another purpose. D.R.E. 105. Evidence of payment from collateral sources fits within this classification. Annotation, 47 A.L. R.3d at 239. However, the decision to admit evidence for one purpose, which is inadmissible for another purpose, requires the trial judge to balance the prejudice to each of the respective parties' cases. D.R.E. 403; *Eichel v. New York Cent. R.R. Co.,* 375 U.S. 253, 255, 84 S.Ct. 316, 317, 11 L.Ed.2d 307 (1963) (likelihood of misuse by jury outweighed value of evidence). If the trial judge decides to admit relevant evidence for one purpose even though the same evidence is admissible for another purpose, the judge should also, upon request, restrict such evidence to its proper scope and instruct the jury accordingly. D.R.E. 105. *See Tipton v. Socony Mobil Oil Co.,* 375 U.S. at 35–36, 84 S.Ct. at 2 (suggesting a cautionary or limiting instruction may have cured the damage of admitting collateral source evidence).

■ In this case, the trial judge weighed the merits of admitting the evidence concerning James' receipt of disability income. James testified during her direct examination that a reduction in her finances precluded her from purchasing medication for the treatment of her injury. The trial judge concluded, under the circumstances presented, that it was proper to permit the Glazers to cross-examine James, for the purpose of impeachment, concerning her post-occurrence finances and her pre-occurrence finances. Thereafter, he instructed the jury to only consider James' receipt of disability benefits in deciding James' credibility as a witness and not to consider those benefits with respect to the ultimate issue of damages. We find no abuse of discretion in this case. *Firestone Tire and Rubber Co. v. Adams,* Del.Supr., 541 A.2d 567, 570 (1988); *Gladden v. P. Henderson & Co.,* 385 F.2d at 483–84. *See also Tipton v. Socony Mobil Oil Co.,* 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963).

### *Motion for a New Trial/Weight of the Evidence*

■ The final contention presented by James is that the Superior Court should have granted her motion for a new trial because the jury's verdict was against the weight of the evidence. A trial judge has the discretionary power to grant a motion for a new trial on the ground that the jury verdict is against the weight of the evidence. *Storey v. Camper,* Del.Supr., 401 A.2d 458 (1979). There is "no clear-cut litmus test" for determining when that power should be exercised. *Id.* at 464. However, "[b]arring some unusual factor in the case, perhaps the shortest guideline which gives implicit consideration to the key factors—the separate function of the motion, the role of the jury, the unique viewpoint of the [t]rial judge[s]," is that a trial court "should not grant such a new trial motion unless the jury verdict is 'at least ... against the *great* weight of the evidence.'" *Id.* at 465 (citations omitted).

■ In an appeal from either the grant or denial of a new trial, the question generally presented is whether the trial judge's decision constituted an abuse of discretion. *Id.* (citing *Chavin v. Cope,* Del.Supr., 243 A.2d 694, 695 (1968); *Trowell v. Diamond Supply Co.,* Del.Supr., 91 A.2d 797, 801–02 (1952)). However, when a motion for a new trial, based "solely on weight of the evidence grounds *is denied in a jury case,* this Court on appeal is bound by the jury verdict if it is supported by evidence." *Id.* (citations omitted) (emphasis added). "[O]n appeal [in civil cases] from a verdict of a jury, the findings of the jury, if supported by evidence, shall be conclusive." Del.

Const., art. IV, § 11. In this case, there is evidence in the record to support the jury's verdict. The record reflects that the weight of the evidence was not so clearly in James' favor that no reasonable jury could have found for the Glazers. Accordingly, we find no abuse of discretion in the Superior Court's decision to deny James' motion for a new trial.

### Conclusion

The judgments of the Superior Court are AFFIRMED.