GRAND VENTURES, INC., Plaintiff,

v.

Terry M. WHALEY, et al., Defendants,
Third Party Plaintiffs,

v.

HOLCOMB & SALTER, a business
entity of the State of Delaware,
Third Party Defendant.

Superior Court of Delaware,
Kent County.

Submitted: Dec. 13, 1991.
Decided: March 31, 1992.

Jeffrey S. Welch and Philip Trainer, Jr., of Ashby, McKelvie & Geddes, Wilmington, for plaintiff.

N. Maxson Terry, Jr., of Terry, Terry, Speakman & Wright, Dover, for defendant Terry M. Whaley.

Stephen P. Casarino, of Casarino, Christman & Shalk, Wilmington, for Holcomb & Salter, third party defendant.

STEELE, Judge.

Holcomb & Salter Insurance Agency ("Holcomb & Salter") move for a new trial based on the propriety of certain jury instructions and alleged inconsistencies in the jury's verdict in the trial of *Grand Ventures v. Whaley v. Holcomb & Salter*, Del.Super., C.A. 87C–FE–21. Grand Ventures has made a post-trial motion for treble damages, attorneys' fees, costs and pre-judgment interest against Holcomb & Salter and for costs and pre-judgment interest against Terry M. Whaley ("Whaley").

### Facts

The controversy which ultimately resulted in trial stemmed from the lack of insurance coverage to reimburse plaintiff, Grand Ventures, Inc. ("Grand Ventures") for fire damage to its restaurant, "Irish Eyes." In its complaint, Grand Ventures alleged it had paid a premium to Whaley and the Insurance Place ("TIP")[1] and in return received a document labeled as an insurance binder. Upon seeking insurance coverage for severe fire damage to the restaurant, Grand Ventures learned of Whaley's failure to procure an insurance policy. Grand Ventures alleged Whaley acted as Holcomb & Salter's agent at all times relevant to the complaint. Grand Ventures ultimately brought suit against Whaley and Holcomb & Salter for breach of contract, negligence and fraud and against Holcomb & Salter for alleged violations of the Consumer Fraud Act, 6 *Del.C.* § 2511, *et seq.* and the Deceptive Trade Practices Act, 6 *Del.C.* § 2531 *et seq.* ("DTPA").

The Court instructed the jury on agency, negligence, the Consumer Fraud Act and the Deceptive Trade Practice Act. Pursuant to Superior Court Civil Rule 49(b), the

---

1. TIP filed bankruptcy. The parties severed TIP from this case. After commencement of the trial, the Court dismissed claims against defendant Stephens, leaving only Whaley and Holcomb & Salter as defendants to this action.

Court issued special interrogatories to the jury as follows:

1. Do you find in favor of the plaintiff, against the defendant, Whaley?
2. Do you find in favor of the plaintiff, against the defendant Holcomb & Salter?
3. If your answer to No. 2 is "Yes," do you find any violation of the Consumer Fraud Statute?
4. If your answer to No. 2 is "Yes," do you find any violation of the Deceptive Trade Practices Act?
5. If your answer to No. 1 or No. 2 is "Yes," in what amount of compensatory damages do you award plaintiff?
6. If your answer to No. 1 is "Yes," do you find punitive damages? If so, in what amount?

The jury returned a verdict in favor of Grand Ventures and against both Whaley and Holcomb & Salter. More specifically, the jury found against Whaley and Holcomb & Salter on the negligence claims and awarded plaintiff $70,000 as compensatory damages. Additionally, the jury found against Whaley for fraud and awarded plaintiff $4,000 as punitive damages against Whaley. The jury also found Holcomb & Salter had violated the DTPA but not the Consumer Fraud Act.

The jury's verdict sheet contained affirmative answers to special interrogatories 1, 2, and 4. In response to no particular inquiry, the bottom of the verdict sheet also contained a notation as follows:

85%–Holcomb & Salter

15%–Mr. Whaley

Outside the jury's presence, counsel argued over the proper interpretation of this notation and how it related to the jury's findings. Counsel for Whaley argued the verdict should result in apportionment of fault in accordance with the jury's notation. Counsel for Holcomb & Salter argued the impropriety of apportionment of fault following an affirmative response to special interrogatory # 4 through which the jury found Holcomb & Salter violated the Deceptive Trade Practices Act as noted *supra*. Counsel for Holcomb & Salter claimed that the affirmative response to # 4 necessarily entailed a finding of Whaley as Holcomb & Salter's agent and that the jury's apportionment does not make sense in the context of agency because all liability for an agent's negligence falls upon the principal of that agent.

Holcomb & Salter argued the jury cannot consistently find both parties negligent and a principal/agency relationship between them and that this inconsistency represents confusion in the minds of the jury. Holcomb & Salter claimed the jury's apportionment of fault between Holcomb & Salter and Whaley could not be reconciled with its finding Whaley was an agent of Holcomb & Salter.

After a meeting with counsel in chambers, the Court decided it would submit additional special interrogatories to allow the jury to apportion the percentage of the relative degrees of fault of Whaley and Holcomb & Salter if the jury gave affirmative answers to questions 1 and 2 on the original interrogatories (above) based on the negligence of both parties. In addition to Whaley's requested special interrogatory on apportionment, Holcomb & Salter requested the Court ask the jury if it found an agency relationship between Holcomb & Salter and Whaley. Upon the Court's submission of the question "[d]id you find Terry M. Whaley to be the agent of Holcomb & Salter?" the jury answered affirmatively. After further argument outside the jury's presence, the Court asked the jury to reply to the following:

"... there is more information on the verdict sheet that's been given to us than was requested and in light of that I have to ask an additional question of you, and that is if your answer was yes to both Questions 1 and 2 and is based upon negligence on the part of both parties, then apportion by a percentage the relative degrees of fault of the parties. The answer to Questions 1 and 2 as you gave them to us was, in fact, yes.

What we now want to know is did you answer yes because of a finding of negligence on the part of both parties, and if you did find negligence on the part of

both parties we need to know the percentage of the relative degrees of fault of the parties and we need to hear it from the forelady."

The jury answered that it based its affirmative responses to special interrogatories 1 and 2 on the negligence of both parties and that they meant to apportion fault 85% to Holcomb & Salter and 15% to Whaley.

### Discussion

■ In considering a motion for new trial, this Court must exercise its discretion and refrain from granting the motion unless the jury issues a verdict at least against the great weight of the evidence. *James v. Glazer,* Del.Supr., 570 A.2d 1150 (1990) (citing *Storey v. Camper,* Del.Supr., 401 A.2d 458 (1979). "An award should not be disturbed unless it is so clear as to show it was a result of passion, prejudice, partiality or corruption; or that it was manifestly in disregard of the evidence or applicable rules of law." *Adamkiewicz v. Milford Diner,* Del.Super., C.A. No. 90C–JA–23, 1991 WL 35709, Steele, J. (Feb. 13, 1991) (quoting *Parker v. Kappel,* Del.Super., C.A. No. 86C–OC–48, 1991 WL 15235, Herlihy, J. (Jan. 4, 1991)).

In this motion for new trial, the Court need only address two issues. The Court must first determine the purely legal matter concerning whether the DTPA properly applies to this case. A finding that the DTPA does not apply to this case will render improper any jury instructions and findings relating to the DTPA. The Court will then consider whether the specific notations on the jury's verdict sheet and responses to subsequent special interrogatories rendered the jury's verdict inconsistent and irreconcilable. The evidence produced at trial clearly sufficed to support the jury's finding with respect to the common law claims as well as the amount of damages awarded. No party argues to the contrary.

### I. OBJECTIONS TO CHARGE ON DTPA

At trial, counsel for Holcomb & Salter took exception to the Court's initial charge on the Deceptive Trade Practices Act, 6 *Del.C.* § 2532(a) ("DTPA"). The jury submitted a note asking for clarification on the DTPA. Counsel for Holcomb & Salter then requested the Court read the entire statute to the jury. This section reads as follows:

§ 2532 **Deceptive trade practices**

(a) A person engages in a deceptive trade practice when, in the course of his business vocation, or occupation, he:

(1) Passes off goods or services as those of another;

(2) Causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services;

(3) Causes likelihood of confusion or of misunderstanding as to affiliation, connection, or association with, or certification by another;

(4) Uses deceptive representations or designations of geographic origin in connection with goods or services;

(5) Represents that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have, or that a person has a sponsorship, approval, status, affiliation, or connection that he does not have;

(6) Represents that goods are original or new if they are deteriorated, altered, reconditioned, reclaimed, used, or secondhand;

(7) Represents that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

(8) Disparages the goods, services, or business of another by false or misleading representation of fact;

(9) Advertises goods or services with intent not to sell them as advertised;

(10) Advertises goods or services with intent not to supply reasonably expectable public demand, unless the advertisement discloses a limitation of quantity;

(11) Makes false or misleading statements of fact concerning the reasons

for, existence of, or amounts of, price reductions; or

(12) Engages in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

After the Court read 6 *Del.C.* § 2532(a) to the jury in its entirety, counsel for Holcomb & Salter noted on the record its continued objection to the instruction on the DTPA, not based on a lack of completeness but on its lack of application to this case. Plaintiff correctly points out Holcomb & Salter thereby waived any exception to the Court's language in its ultimate charge on the DTPA. *Chrysler Corp. v. Quimby,* Del.Supr., 144 A.2d 123, 130 (1958).

Holcomb & Salter's contentions break down in the following manner: (1) Grand Ventures lacks standing to bring an action under the DTPA; (2) proper interpretation of conflicting caselaw reveals the DTPA only provides injunctive relief; (3) Grand Ventures failed to allege and/or prove the "pattern" or "course of conduct" required under the DTPA to recover treble damages; (4) the DTPA does not apply to the sale of insurance because insurance does not constitute "goods or services" covered under the DTPA; and (5) Delaware's "Unfair Practices in the Insurance Business", 18 *Del.C.* Ch. 23, has more precise application to this case and preempts any action brought under the more general DTPA provision.

## Standing for Consumers Under the DTPA

■ Caselaw reflects a split in the Superior Court over standing qualifications for consumer plaintiffs under the DTPA. Judge Babiarz has held the DTPA "provide[s] a remedy for injury to business interests, rather than harm to individual consumers." *Wald v. Wilmington Trust Co.,* Del.Super., 552 A.2d 853 (1988). Judge Taylor, on the other hand, has held both business interests and consumers alike may bring an action under the DTPA. *Norman Gershman's Things to Wear, Inc. v. Mercedes–Benz of North America, Inc.,* Del.Super., 558 A.2d 1066 (1989), *aff'd,* 596

A.2d 1358 (1991); *Roberts v. American Warranty Corp.,* Del.Super., 514 A.2d 1132 (1986). Judge Herlihy recently addressed this conflict and held, in accord with public policy and the apparent legislative intent, the DTPA does confer a right of action on individual consumers. *See Edwards v. Porter,* Del.Super., C.A. No. 88C–OC–174, 1991 WL 165877, Herlihy, J. (July 26, 1991) [appeal pending].

Without even reconciling the conflicting caselaw, the Court finds Grand Ventures clearly faces no hurdle as far as standing based on consumer status because Grand Ventures is a business interest, not an individual consumer. Therefore, under both views in the conflicting caselaw, Grand Ventures satisfies the first requirement for standing to bring its DPTA claim.

## Other Standing Requirements and Prerequisites to Treble Damages under the DTPA

■ The Court finds Grand Ventures fails to meet an additional qualification needed to seek relief under the DTPA. Holcomb & Salter argue the DTPA imparts monetary relief in the form of treble damages only in conjunction with injunctive relief. Holcomb & Salter also contend proper plaintiffs can only invoke the DTPA for alleged "patterns" of deceptive practices, rather than for isolated incidents of deception.[2]

Although not clearly worded in the statute, the Court finds one may collect damages under the DTPA only in conjunction with injunctive relief. The DTPA remedial section follows:

(a) A person likely to be damaged by a deceptive trade practice of another may be granted an injunction against it under the principles of equity and on terms that the court considers reasonable. Proof of monetary damage, loss of profits, or intent to deceive, is not required. Relief granted for the copying of an article shall be limited to the prevention of confusion or misunderstanding as to source.

---

**2.** The Court recognizes many of the same cases that conflict on the issue of a consumer's standing under the DTPA differed on these other issues as well.

(b) The court in exceptional cases may award reasonable attorneys' fees to the prevailing party. Costs or attorneys' fees may be assessed against a defendant only if the court finds that he has willfully engaged in a deceptive trade practice.

(c) The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State. **If damages are awarded to the aggrieved party under the common law or other statutes of this State, such damages awarded shall be treble the amount of actual damages proved.**

6 *Del.C.* § 2533 [emphasis added].

Subsection (c), the only provision with a gateway to collect money damages, is susceptible to various interpretations. The critical sentence in § 2533(c) provides "[i]f damages are awarded ... under the common law or other statutes of this State, such damages awarded shall be treble the amount of the actual damages proved." This subsection itself does not clearly indicate whether one must qualify under subsection (a) in order to seek treble damages under the terms of subsection (c).

Among the many possible interpretations of the sentence, this Court must determine which of two general constructions the Delaware legislature intended by adding this sentence to the remedial provision of the 1964 Uniform Deceptive Trade Practices Act ("UDTPA") (Act revised 1966). On its face the statute does not clarify which of the following alternative ways of construing the statute the General Assembly would prefer:

(1) Plaintiffs may bring an action under the DTPA when a defendant's qualified deceptive conduct persists throughout the law suit and plaintiff seeks specifically to stop the practice via a court ordered injunction. By adding the last sentence in § 2533(c), the General Assembly intended to provide a mechanism for automatic treble damages when the same

conduct that engenders injunctive relief also caused plaintiff measurable harm in the past for which the common law or other statute provided an award for nonpunitive damages.

Or,

(2) The General Assembly intended to allow even plaintiffs harmed only in the past in a single, non-continuing incident by a defendant's qualified deceptive conduct to obtain a guaranteed trebling of any non-punitive damage awarded under the common law or other statute for the same deceptive conduct. Under this construction, a plaintiff could obtain treble damages pursuant to the DTPA even in the absence of a viable claim for injunctive relief. Even defendants who clearly halted the deceptive practice would owe treble damages to any plaintiff harmed by conduct in the past as long as those harmed bring suit within the proper limitations period.

After careful consideration, the Court finds, based on the statutory language in § 2533, the probable legislative intent, and persuasive reasoning from a line of Delaware cases that in order to claim treble damages (or any damages) under § 2533(c) of the DTPA, one must first meet the standing requirements of § 2533(a), as described in the first interpretation above. *Galasso Import Company v. Porter,* Del.Super., C.A. No. 79A–JA–19, Stiftel, J. (April 23, 1980); R. Dole, *Merchant and Consumer Protection: The Uniform Deceptive Trade Practices Act,* 76 Yale L.J. 485, 495 (1967).

Clearly, without the added sentence, only those seeking injunctive relief may recover under the DTPA. Indeed, a review of the Uniform Act itself (both the 1964 and 1966 versions) and of the operative law in those states which have adopted it without variation confirms the Uniform Act purposely limits its remedy to injunctive relief, i.e., to stop an ongoing deceptive trade practice.[3]

The Delaware DTPA notably contains the following provision:

---

**3.** In fact, plaintiffs who bring suit for relief under the 1966 UDTPA and know the defendant's deceptive conduct has ceased may find themselves charged with their opponent's attorneys fees.

## § 2535. Uniformity of interpretation.

This chapter shall be construed to effectuate its general purpose to make uniform the law of those states which enact it.

Therefore, the Court should look to the handling of remedies in other jurisdictions that have adopted the UDTPA. Three other states have adopted the 1964 version of the UDTPA, and many more have adopted the 1966 amended version. The slight changes to the 1964 Act in the 1966 Act do not impact on the question of availability of monetary damages as compared with injunctive relief under either version of the Act. Of those states adopting the 1964 version of the Act, only Delaware supplements § 2533(c). None of the other adopting jurisdictions provide a damages remedy, if at all, except in conjunction with injunctive relief. *See* UNIF. DECEPTIVE TRADE PRACTICES ACT, 7A U.L.A. 303 (1964 Act) (Act revised in 1966) (hereinafter "UDTPA" or "Uniform Act") (noting adopting states interpretations and variations of Act and citing cases limiting relief to injunctions). One state, Oklahoma, tailored the UDTPA by adding a method to collect damages to the injunctive relief provision; but even here, one must first have standing to seek an injunction before obtaining damages. *See* 78 Okl.St.Ann. § 54(a).[4]

Both the notes preceding the UDTPA and legal scholars have explained that in designing the Uniform Act, the drafters aimed "to remove undue restrictions on the common law action for deceptive trade practices." UNIF. DECEPTIVE TRADE PRACTICES ACT, preferatory note at 300; R. Dole, *supra*. For example, the Uniform Act, deletes such requirements as proof of competition between parties, proof of damages and proof of intent to afford relief. The Act, therefore, applies to give relief even for defendants' inadvertently deceptive trade practices.

The Superior Court has on more than one occasion construed § 2533 to provide treble damages only in conjunction with injunctive relief. One such opinion characterized the bounds of the DTPA as follows:

The Deceptive Trade Practices Act is a uniform act which codifies the common law of unfair competition.... a plaintiff under the act must have a business or a trade interest at stake and a retail consumer does not have standing to sue under the act. The relief which may be granted to a plaintiff under this act is **an injunction to stop unlawful conduct and only a plaintiff with standing to seek such a remedy may seek the treble damages provided for in the act.**

*Griffith v. Thawley v. Chrysler,* Del.Super., J. Christie, C.A. No. 81C–MR–9 (1983) (citing cases); *See also* R. Dole, *supra*, at 497–98 (giving reasons why the Uniform Deceptive Trade Practices Act limits relief to injunctions); *But See Roberts v. American Warranty Corp.,* Del.Super., 514 A.2d at 1134 (construing DTPA "to be available to any person who has been damaged as a result of prohibited conduct" and awarding treble damages in lieu of punitive damages without reference to lack of claim for injunctive relief). In *Wald v. Wilmington Trust Co.,* 552 A.2d 853, 855 (Del.Super.1988), the court declared:

Treble damages are available only in conjunction with injunctive relief under 6 *Del.C.* § 2533(a). The association of the treble damage remedy with injunctive relief indicates that the Act is directed at patterns of deceptive conduct, **not isolated incidents of consumer fraud.** Plaintiff does not have standing to bring a claim for treble damages pursuant to 6 *Del.C.* § 2533.

■ The Court finds logic behind defining a *per se* violation for qualified deceptive practices and then restricting standing to those who seek to put an end to the conduct by seeking an injunction. This appears the only reasonable way to read the Uniform Act and its corresponding Dela-

---

**4.** This provision states that "[p]roof of actual monetary damages, loss of profits or intent shall not be required; but if in such action damages are alleged and proved, the plaintiff, in addition to injunctive relief, shall be entitled to recover from the defendant the actual damages sustained by him."

ware version despite the ambiguity in Delaware's statute. If the General Assembly intended to provide a damage remedy, not coupled with injunctive relief, it would have said so much more clearly and emphatically. Allowing one to pursue a damages remedy under the DTPA without standing to seek an injunction would be clearly inconsistent with the section favoring uniformity among adopting states. Furthermore, "reliance on an injunctive remedy makes it reasonable to have the substantive provisions of the act reach unintentional as well as intentional conduct." R. Dole, *supra.*, at 496. The General Assembly most likely did not intend the unduly harsh impact on defendants who ceased their deceptive practice which could result if plaintiffs could get treble damages under the Act without standing to seek an injunction. *See Glazewski v. Coronet Ins. Co.*, 108 Ill.2d 243, 91 Ill.Dec. 628, 483 N.E.2d 1263 (1985) (citing proposition that drafters of the Uniform Act limited relief to injunctions in part because "damages would often be too harsh or inappropriate a remedy for inadvertent wrongs"). The General Assembly more likely added the last sentence to § 2533(c) to provide an automatic punitive mechanism when a defendant's qualified deceptive conduct continues despite the lawsuit against it, and plaintiff successfully showed defendant did not merely commit an inadvertent deceptive trade practice, but also damaged the plaintiff under the common law or other statute. For these reasons, the Court finds one must have standing under § 2533(a) in order to pursue treble damages under § 2533(c).

■ Grand Ventures clearly does not meet those requirements in § 2533(a). To assert a viable claim for injunctive relief under the DTPA, one must properly fit the description in § 2533(a) of "a person likely to be damaged by a deceptive trade practice...." Grand Ventures neither sought to obtain, nor had standing to seek an injunction against Holcomb & Salter. Any deception to Grand Ventures occurred in the past; plaintiff could not claim any pro-

spective "likelihood of damage" based on the deception alleged. *Sexton v. J.C. Penney Co., Inc.*, Del.Super., C.A. No. 77C-DE–74, Walsh, J. (1978). The damage claimed by Grand Ventures already occurred, and for such damage, common law tort remedies provide the proper mechanism for Grand Ventures to seek relief.[5] Furthermore, "[t]he association of the treble damage remedy with injunctive relief indicates the Act is directed at patterns of deceptive conduct, not isolated incidents of consumer fraud." *Wald v. Wilmington Trust Co.*, 552 A.2d at 855. Grand Ventures sought recovery for allegedly unlawful conduct based on one transaction. While defendants may well have engaged in the kind of conduct alleged in this case on multiple occasions, the event at issue represents merely one isolated incident which the DTPA simply does not address.

The Court recognizes that contrary to its interpretation of § 2533(c), the DTPA contains no jurisdictional provision suggesting DTPA claims generally belong in the Chancery Court because of the injunctive relief limitation. Notably, the other subchapters in Delaware's Prohibited Trade Practices, 6 *Del.C.* Ch. 25, do make reference to jurisdiction lying with either the Superior (for criminal claims) or Chancery Court. The lack of reference to proper jurisdiction under the DTPA most likely derives from the General Assembly's having adopted, almost verbatim, the Uniform Act, making but one addition to § 2533. One would not expect the Uniform Act to reflect attention to Delaware's unique division of the courts of law and equity, and the General Assembly presumably did not address this missing procedural guideline, because in substance, it found the Uniform Act desirable and attempted to keep it as intact as possible.

### PREEMPTIVE EFFECT OF INSURANCE CODE

■ Because the Court finds the association of the DTPA with injunctive relief and

---

5. Perhaps in other cases, plaintiffs have sought or could seek treble damages under the DTPA in this court despite a failure to pursue an injunc-

tion as long as that plaintiff could have sought injunctive relief had they so chosen. This question remains open for another day.

with patterns of conduct dispositive as to the application of the DTPA to this case, it need not address the remainder of Holcomb & Salter's contentions. The Court notes, however, contrary to Holcomb & Salter's seemingly logical reasoning, binding and persuasive authority suggest the DTPA may apply to claims otherwise regulated by Delaware's "Unfair Practices in Insurance" section of the Code, 18 *Del.C.* Ch. 23.

In their motion for new trial, Holcomb & Salter cite *Casson v. Nationwide Insurance Co.*, Del.Super., 455 A.2d 361 (1982) for the proposition "18 *Del.C.* Ch. 23, being the more specific statute, is the regulation that is applicable" precluding application of the more general DTPA. The Court does not find *Casson* pertinent to the issue of whether the Insurance Commission Regulations on Deceptive Trade Practices precludes a DTPA claim against an insurance company and/or its agent.

Delaware courts do not appear to have addressed the specific issue of the preemptive effects, if any, of the Insurance Code's unfair trade practice provisions on the DTPA. The Superior Court has, however, found the Insurance Code does not preempt any private right of action under the Consumer Fraud Act which is the companion Act to the DTPA. *Edwards v. Porter*, Del Super., C.A. No. 88C–OC–174 at 15, 1991 WL 165877. The Court rejected the preemption arguments despite language in the Consumer Fraud Act 6 *Del.C.* § 2511, *et seq.* specifically removing its jurisdiction from matters subject to the jurisdiction of the Insurance Commissioner. 6 *Del.C.* § 2513(b)(3).

In construing and reconciling the legislative intent of the Insurance Unfair Trade Practice Provisions and the Consumer Fraud Act, the Court found as follows:
... The UTPA provides that "[n]o order of the Commissioner pursuant to this section or order of a court to enforce it shall *in any way* relieve or absolve any person affected by such order *from any other liability,* penalty or forfeiture *under law.* 18 *Del.C.* § 2308(f) (1975) (emphasis added). This Court reads 18 *Del.C.* § 2308(f) (1975) as indicating that

the Delaware legislature, in authorizing the Commissioner to deal with unfair trade practices in the insurance industry, did not intend to preempt other methods of redressing unfair trade practices, including private party suits against insurance carriers. Rather, the Court believes that the provision evinces a legislative intent to provide an additional, supplementary means of controlling and eradicating misconduct by insurers.

*DiSimplico v. Equitable*, Del.Super., C.A. No. 85C–JA–79, 1988 WL 15394, Barbiarz, J. (Jan. 29, 1988). The Court in *DiSimplico* apparently placed greater weight on the broad language in the Insurance Code rather than on the restrictive language of the Consumer Fraud Act. The Court finds no reason to conclude the Insurance Code has any more preemptive effect on the DTPA than on the Consumer Fraud Act. *But see, Moses v. State Farm*, Del.Super., C.A. No. 90C–10–020, 1991 WL 495198, Lee, J. (Dec. 31, 1991) (denying that *DiSimplico*'s implied private right of action under the Consumer Fraud Act means the DTPA allows such private actions).

The Federal District Court in Delaware has construed 18 *Del.C.* § 2308(f) to conclude the Insurance Code section on deceptive trade practices does not preempt a private right of action against an insurer for, inter alia, alleged DTPA violations. *Correa v. Pennsylvania Mfrs. Ass'n Ins. Co.*, 618 F.Supp. 915, 926 (D.Del.1985). *See also Hardy v. Pennock, Ins. Agency, Inc.*, 365 Pa.Super. 206, 529 A.2d 471, 478 (1987) (holding "that an insured could maintain a private cause of action under the Unfair Trade Practices and Consumer Protection Law even though allegations in the complaint fell within the purview of acts and practices prohibited by the Unfair Insurance Practices Act)."

The "application" provision of the DTPA does carve out conduct to which the DTPA does not apply. The DTPA does not apply to "... [c]onduct in compliance with the orders or rules of, or a statute administered by a federal, state, or local governmental agency...." 6 *Del.C.* § 2534. However, as discussed *supra*, 6 *Del.C.*

§ 2533(c) states "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this State." Additionally, as noted in *DiSimplico*, the Insurance Code provides "[n]o order of the Commissioner pursuant to this section or order of a court to enforce it shall *in any way* relieve or absolve any person affected by such order *from any other liability*, penalty or forfeiture *under law.*" 18 *Del.C.* § 2308(f) (1975) (emphasis added).

In absence of definitive authority from the Delaware legislature, the Court finds the above cases indicate the Delaware "Unfair Practices in Insurance" code section does not preempt claims under the more general DTPA.

## II. JURY VERDICT INCONSISTENCIES

Holcomb & Salter argues the jury could not logically find an agency relationship and both parties negligent because an agent's negligence always imputes liability to the principal. At trial Holcomb & Salter presented its position as follows: "If they find negligence and they found both of them negligent, they certainly didn't find agency. So the jury is, I think, confused by that." In their current motion, Holcomb & Salter assert "[a]n apportionment of fault should not have been considered by the jury unless it found that Whaley was not an agent of Holcomb & Salter but that Holcomb & Salter was negligent in not placing insurance for Whaley. It was only if the jury found Whaley was not an agent that it was to consider an apportionment of fault." Holcomb & Salter cite no authority for their proposition, and the Court disagrees with it for the reasons that follow.

■ The Court notes all parties' counsel agreed in conference to the content of the special interrogatories concerning apportionment and did not object to these at trial. No party may object to an instruction without having objected to it before the jury returns with its verdict. Super.Ct.Civ.R. 51. Moreover, a party has no right to contest the particular language of

an instruction, and no error results from an instruction which states the law correctly. *Id.; Chavin v. Cope,* Del.Supr., 243 A.2d 694 (1968). Holcomb & Salter waived its right to challenge the Court's submission of the special interrogatories to the jury. Holcomb & Salter only objected to the charges on apportionment insofar as they may conflict with the jury's determination that Whaley was Holcomb & Salter's agent. Holcomb & Salter did not dispute the content of the special interrogatories themselves, but rather asserted the jury's verdict with respect to the DTPA, and response to the special interrogatory on agency could not be reconciled with its apparent apportionment of negligence. Therefore, this Court need not consider the validity of the content of the special instructions themselves, but rather, must only try to reconcile the jury's finding agency with the jury's apportionment of fault in response to the Court's instructions on negligence.

Superior Court Civil Rule 49(b) addresses the conditions under which the Court should order a new trial for inconsistencies in a jury's answers to interrogatories. Superior Court Civil Rule 49(b) states "[w]hen the answers are inconsistent with each other and one or more is likewise inconsistent with the general verdict, judgment shall not be entered, but the Court shall return the jury for further consideration of its answers and verdict or shall order a new trial."

■ This Court must try to reconcile any apparent inconsistencies in a jury's verdict. The jury's verdict will stand as long as the Court finds one possible method of construing the jury's answers as consistent with one another and with the general verdict. *Atlantic & Gulf Stevedores v. Ellerman Lines, Ltd.,* 369 U.S. 355, 82 S.Ct. 780, 7 L.Ed.2d 798 (1962).

Holcomb & Salter correctly point out the jury's finding of DTPA violations by Holcomb & Salter necessarily implies the jury's antecedent finding that Holcomb & Salter and Whaley stood in a principal/agent relationship to one another. In fact, the jury confirmed this in its response

to subsequent special interrogatories. The Court recognizes had the jury answered the agency question prior to that on apportionment, an affirmative response to the agency question would have obviated the need for a question on apportionment.

■■■ Plaintiff asserts no inconsistency resulted from the jury's verdict in apportioning liability. While the Court agrees it can reconcile the alleged inconsistencies in the verdict, it need not do so in the manner plaintiff suggests. The Court recognizes that liability for an agent's culpable conduct imputes to the principal if the act falls within the scope of the agent's authority. *Mechell v. Palmer*, Del.Supr., 343 A.2d 620, 621 (1975); *In re Brandywine Volkswagen, Ltd.*, Del.Super., 306 A.2d 24, 27 (1973); *See also Bolus v. United Penn Bank*, 525 A.2d 1215 (Pa.Super.1987) (no inconsistency in jury verdict in favor of agent and against principal because when jury had independent basis for finding the principal liable, vicarious liability did not apply). The actual language in the special interrogatories contained a request for apportionment of **fault**, not **liability**. Both parties seem to use the terms negligence, fault and liability interchangeably. The Court finds the specific language in the special interrogatories and jury instructions significant.

The Court interprets the dispute as primarily an issue of semantics and can resolve this issue by noting the distinction between a finding of **negligence** and a finding of **liability**. Black's Law Dictionary defines "imputed negligence" in relevant part as follows:

... doctrine that places upon one person responsibility for the **negligence** of another; such responsibility or **liability** is imputed by reason of some special relationship of the parties.... The independent negligence of one person ordinarily is not imputable to another person except where the relationship between the persons gives rise to an express or implied agency in the **person committing the act of negligence.** [emphasis added].

BLACK'S LAW DICTIONARY 932 (5th ed. 1979).

Prior to imputing liability, it is not improper to analyze the relative degrees of negligence or fault between the parties. A principal/agency relationship precludes the necessity of ascribing relative degrees of negligence because, practically speaking, all liability for an agents authorized culpable conduct will rest with the principal. The law does not, however, forbid describing those two entities as individually negligent to varying degrees just because they stand in a principal/agent relationship. No legal error inheres in describing relative degrees of fault between two entities merely because the resulting liability based on their relationship would render such apportionment superfluous. Under this logic, the jury's apportionment merely amounts to an extraneous activity which the Court may properly disregard. *See Lacey v. Beck*, Del.Super., 161 A.2d 579 (1960) (treating unsolicited breakdown of verdict as private jury notes although breakdown unclear and misrepresentative of total verdict). In this case, the Court instructed the jury on negligence in relevant part as follows:

An insurance agent is required to exercise reasonable care, skill and diligence in the exercise of his employment. If you find that defendant Whaley failed to exercise reasonable care, skill and diligence in his appraisal of the subject property and the procurement of insurance for Irish Eyes and that his negligence was the proximate cause of the damages sustained by Grand Ventures, you should find in favor of Grand Ventures and against defendant Whaley....

If you find that defendant Holcomb & Salter had such a duty and did not exercise reasonable care, skill and diligence in obtaining insurance for Grand Ventures and that as a proximate result of that negligence, Irish Eyes has suffered damages, you should find in favor of Grand Ventures and against defendant Holcomb & Salter.

These instructions indicate that each defendant may have engaged in negligent conduct, apart from whether one party's conduct would result in the liability being imputed to the other.

## III. DECISION AND FINAL VERDICT

The Court denies Holcomb & Salter's motion for new trial and now summarizes and modifies the verdict as follows:

(1) The Court acknowledges it erred in instructing on the DTPA. As discussed, one cannot viably pursue the treble damages remedy under the DTPA without standing to seek injunctive relief under the Act. As the Court finds the DTPA inapplicable to this case, it deems the jury instruction and verdict thereon improper and will treat that portion of the verdict as a nullity.

(2) The Court finds any inconsistency in the jury verdict reconcilable despite the notations on the jury verdict sheet, the finding of agency and subsequent apportionment of fault. The pleadings and evidence in this case gave the jury an option to find Holcomb & Salter negligent, independent of Whaley's negligence, for negligently permitting Terry Whaley to write insurance binders and/or for holding Whaley out to plaintiff or the community as possessing this authority.

(3) Having thus reconciled the jury's apportionment of negligence with its finding of agency, the Court holds the verdict stands at $70,000 compensatory damages assessed against Holcomb & Salter as Whaley's principal and $4,000 punitive damages against Whaley.

(4) As to Grand Venture's post-trial motions, the Court awards costs and pre-judgment interest against Whaley and Holcomb & Salter but cannot award attorneys' fees and treble damages. In the Court's discretion, Grand Ventures may recover ordinary court costs from Whaley and Holcomb & Salter pursuant to Superior Court Civil Rule 54(d) and pre-judgment interest from the date of the loss in accordance with the legal rate as defined in 6 *Del.C.* § 2301. *See Conestoga Chemical Corp. v. F.H. Simonton Corp.*, Del.Supr., 269 A.2d 237 (1970). Ordinarily, court costs do not include attorneys' fees. *Casson v. Nationwide Ins. Co.*, Del.Super., 455 A.2d 361, 370 (1982). Generally, a party may not recover attorneys' fees in absence of specific statutory authorization for such an award. *Stephenson v. Capano Development, Inc.*, Del.Supr. 462 A.2d 1069 (1083). The striking of the portion of the verdict relating to the DTPA clearly removes availability of the treble damages remedy sought by Grand Ventures under 6 *Del.C.* § 2533(c). Likewise, because the Court found the DTPA inapplicable to this case, Grand Ventures cannot recoup their attorneys' fees under the DTPA, 6 *Del.C.* § 2533(b).