Theodore **GLADDEN**, Appellant,

v.

**P. HENDERSON & CO.**

v.

**LAVINO SHIPPING COMPANY**, Third-Party Defendant.

No. 15918.

United States Court of Appeals
Third Circuit.

Argued Sept. 15, 1967.

Decided Nov. 2, 1967.

Avram G. Adler, Freedman, Borowsky & Lorry, Philadelphia, Pa., for appellant.

T. J. Mahoney, Krusen, Evans & Byrne, Philadelphia, Pa. (Thomas E. Byrne, Jr., Philadelphia, Pa., on the brief), for appellee, P. Henderson & Co.

John T. Biezup, Rawle & Henderson, Philadelphia, Pa., for appellee, third-party defendant, Lavino Shipping Co.

Before BIGGS, FREEDMAN and SEITZ, Circuit Judges.

## OPINION OF THE COURT

FREEDMAN, Circuit Judge.

In this diversity case a jury rejected the claim of plaintiff, a longshoreman, that while working on defendant's vessel he sustained personal injuries as a result of the negligence of defendant and the unseaworthiness of the vessel. Plaintiff claimed that while operating a winch he was struck in the back by a block or pulley housing which had broken loose from its inadequate rigging. He seeks a new trial because of errors which he claims occurred in the course of the trial.

### I.

Plaintiff contends that the district court erred in permitting him to be cross-examined regarding the forbidden matter of workmen's compensation benefits. To understand the objection it is necessary to consider the circumstances in which the cross-examination occurred.

On direct examination plaintiff testified that for seven weeks after the accident he was treated by a Dr. Krause and was unable to work. After the first day following his return to work he suffered stiffness and pain, but he did not see Dr. Krause again. Asked why he did not return to Dr. Krause, he replied: "Well, during the seven weeks that I was out of work seeing Dr. Krause my bills got behind and when I went back to work, that was one of the main reasons I went back to work, was to try to catch my bills up and support my family." It was this testimony which brought about the cross-examination of which plaintiff complains.

After plaintiff had reiterated that his return to work was because of financial distress, defendant's counsel asked him: "During this period that you were receiving treatment from Dr. Krause, did your employer make it possible for you to re-

ceive any financial assistance?" Plaintiff's counsel objected and added: "Any benefits secured by Mr. Gladden must be repaid." The court in effect overruled the objection and plaintiff replied that he had received some such financial assistance, but that it was not what he was accustomed to earn on the job; it was, he said, about $70 a week.[1] In the course of a colloquy his counsel stated that Dr. Krause had been paid for his services by the third party defendant. The trial judge indicated that while he would ordinarily have forbidden this cross-examination, he would permit it on the ground that plaintiff himself had opened the subject in his testimony that he had returned to work and had not gone back to Dr. Krause because of his straitened financial circumstances.

■ Although plaintiff refers to the cross-examination as dealing with the receipt of workmen's compensation, neither the questions asked nor the colloquies which surrounded them describe the financial assistance as coming from workmen's compensation or its equivalent. The problem, however, remains the same, for the collateral benefit rule is not limited to workmen's compensation payments. See the comprehensive discussion and citations by Chief Judge Biggs in Feeley v. United States, 337 F.2d 924, 929–931, 12 A.L.R.3d 1228 (3 Cir. 1964).

■■ It is now well settled in Pennsylvania that payments of workmen's compensation, unemployment and other collateral benefits should remain unknown to a jury in weighing damages,[2] because of the danger of prejudicial effect, even when offered as logically relevant evidence affecting the credibility of a plaintiff's claim of the extent of his injury.[3] The same principle is the foundation for the inadmissibility of evidence regarding collateral benefits or conduct relating to their receipt in cases arising under the Federal Employers' Liability Act[4] and the Jones Act.[5]

■■ Here, however, plaintiff on direct examination brought into the case an additional, affirmative element by testifying that he had returned to work and had not visited Dr. Krause again because he had fallen behind in the payment of his bills and wanted to catch up on them and support his family. Defendant was not required to leave this testimony unchallenged and had the right to ask plaintiff on cross-examination whether he had received financial assistance, as affecting the credibility of his assertion.[6] To have forbidden such cross-examination would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity from inquiry on cross-examination. This is what distinguishes the present case from Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316 (1963), upon which plaintiff relies. In that case, brought under the Federal Employers' Liability Act, the plaintiff had not affirmatively testified in such a manner as to warrant any effort at contradiction by cross-examination. Instead, defendant there attempted to introduce prejudicial evidence of disability pension payments simply because it was logically relevant on the extent and duration of the plaintiff's disability. The

---

1. The benefits alluded to were apparently those payable to injured employees under the Longshoremen's and Harbor Workers' Compensation Act, §§ 7, 8, 33 U.S.C. §§ 907, 908.

2. Feeley v. United States, 337 F.2d 924, 931–932 (3 Cir. 1964); see Eichmann v. Dennis, 347 F.2d 978, 982 (3 Cir. 1965). See also Annot., 7 A.L.R.3d 516 (1966) and related citations at 518–519.

3. Boudwin v. Yellow Cab Co., 410 Pa. 31, 188 A.2d 259 (1963); Lobalzo v. Varoli, 409 Pa. 15, 20–21, 185 A.2d 557 (1962).

4. Eichel v. New York Central Railroad Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed. 2d 307 (1963); see also Mahon v. Reading Company, 367 F.2d 25 (3 Cir. 1966) (Federal Safety Appliances Act).

5. Tipton v. Socony Mobil Oil Co., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963).

6. See Rice v. Shenk, 293 Pa. 524, 143 A. 231 (1928); Sperry v. White Star Lines, Inc., 315 Pa. 361, 172 A. 646 (1934).

barriers which have been created against the admission of otherwise relevant evidence because of its prejudicial effect do not extend to the affirmative volunteering by a plaintiff of testimony which breaks into this restricted area.

■■ If plaintiff had not added his affirmative testimony on direct examination he would have had the advantage of the collateral benefit rule and the jury would have been required to assess his damages without any knowledge of the collateral benefit he received. They would not have had before them the effect it might have had on plaintiff's claim of extensive and continued impairment of his health. But the collateral benefit rule cannot be made a springboard from which a plaintiff may go forward with affirmative evidence that he returned to work while he was still ailing, because of financial need and then seek immunity from cross-examination regarding it. The boundary of silence was crossed when plaintiff affirmatively presented on direct examination the reason why he had returned to work after seven weeks and had not again visited his physician. The trial court therefore was justified in opening the door for cross-examination for the narrow purpose of testing the credibility of plaintiff's assertion. Moreover, plaintiff's counsel stated without objection that plaintiff was obliged to repay the $70 a week assistance, so that any suspicion of a double recovery was eliminated.

## II.

Plaintiff claims that the trial judge erred in refusing to permit the introduction in evidence of a report of the accident known as Form 202, which is required under the Longshoremen's and Harbor Workers' Compensation Act.[7] The form was filed by plaintiff's employer, Lavino, the third party defendant. Lee, who prepared the report for Lavino,

was called as plaintiff's witness and testified that he prepared the form on the basis of a so-called pier report which had been prepared by Doyle, Lavino's supervisor. He also testified that neither Doyle nor Donnelly, Lavino's Assistant Vice President, who had contradicted plaintiff's version of the accident, had given him any information contrary to what he had put into Form 202.

■■ In the light of this testimony we cannot say that the trial court abused its discretion in rejecting the offered document. Whatever argument could be made from any failure of Doyle and Donnelly to supply their contradictory version for Lee's report in Form 202 or in a supplemental report was already available in the evidence and did not require the introduction of the document to make it so. The avowed purpose for which plaintiff offered the document was the impeachment of the credibility of Doyle and Donnelly because of the inconsistency of the report with their testimony. Whatever inconsistency existed already appeared, and permission to include such cumulative evidence is a matter within the discretion of the trial judge. See McKee v. Jamestown Baking Co., 198 F.2d 551, 556 (3 Cir. 1952), see also Woods v. National Life & Accident Ins. Co., 380 F.2d 843, 847 (3 Cir. 1967). Moreover, since the report stated plaintiff's version of the accident, it cannot be said to have been an arbitrary exercise of discretion by the trial court to refuse to permit its reiterated emphasis which would have been the result of the admission of the document in evidence. We therefore do not reach or decide the effect of the provision in § 30(c) of the Longshoremen's and Harbor Workers' Compensation Act[8] that the report "shall not be evidence of any fact stated in such report in any proceeding in respect of such injury or death on account of which the report is made."[9]

---

7. § 30, 33 U.S.C. § 930.

8. 33 U.S.C. § 930(c).

9. See Taylor v. Baltimore & Ohio Railroad Co., 344 F.2d 281, 287 (2 Cir.),

cert. denied, 382 U.S. 831, 86 S.Ct. 72, 15 L.Ed.2d 75 (1965).

### III.

Plaintiff contends that in the course of his summation defendant's counsel made appeals to the jury which require reversal.

1. At one point, having argued earlier that the accident could not have happened as claimed by plaintiff and that at most a trivial disability was being vastly exaggerated, defendant's counsel went on to say that plaintiff nevertheless was a citizen of this country and as such had every right to appeal to the courts, but that it was a matter of civics teaching that where there were rights there were responsibilities, and he wondered whether the jury would feel after hearing all the evidence in the case that plaintiff had observed his responsibilities. At this plaintiff's counsel interjected that the argument was highly improper and asserted that the responsibility for bringing the action was his and that he accepted full responsibility for doing so. He added that he thought that the argument was reaching "highly dangerous ground" and should cease at that moment. There was no objection as such, although the court noted an "exception" for plaintiff, and with this colloquy defendant's counsel turned his argument in another direction.[10]

▮ It is suggested that the argument was sinister because plaintiff and his witnesses are Negroes, whereas the witnesses for the defendants and the jurors are white, although the record, of course, reveals nothing on this subject.[11] The trial judge in denying plaintiff's motion for new trial found the contention without merit and declared that plaintiff had received a fair trial. Moreover, plaintiff's objection at the trial was directed to the further development of the argument rather than to what had already occurred and thus indicates that he did not contemporaneously consider that propriety had been overstepped, but rather feared that the argument might be leading to something improper. We recognize, of course, the difficulty of openly expressing such an objection and therefore adding to the injury. Nevertheless, we cannot say from the record that the opinion of the trial judge, who had a better opportunity to judge the unrecorded effect of the summation, that plaintiff received a fair trial is erroneous because an argument that one should not invoke the aid of the courts in a false claim for a trivial injury, without anything else, clearly constitutes an appeal to racial prejudice.

2. Plaintiff complains that defendant's counsel argued to the jury that some of plaintiff's witnesses were fellow members of his union, also had damage suits pending against steamship companies and were represented by the same

---

10. The precise language of the argument and the colloquy is as follows:

"Now, I want you to understand Mr. Gladden is a citizen of this country and he has every right to the courts of this country, every right that anyone else has in this courtroom, but I think we learned way back in civics that you can put the rights here and you have got to put some responsibility over here, and I just wonder whether you, after hearing all the evidence in this case, will feel that Mr. Gladden has lived up to, has observed his responsibilities under all the circumstances now—

"Mr. Adler: May it please the Court, that argument is highly improper. The responsibility for bringing in a cause of action is mine, and I accept full responsibility, and I think that Mr. Mahoney is getting on highly dangerous ground and I think it is intentional and I think the argument ought to cease at this moment in that vein. He has a right to come into court—

"Mr. Mahoney: Your Honor—

"Mr. Adler:—he had a right to come into this court.

"The Court: You can answer all this in rebuttal. Note an exception on the record for you."

11. For an analysis of the problems raised by counsel's appeal to racial, national or religious prejudice, see Annot., 99 A.L. R.2d 1249 (1963), and cases cited therein.

law firm which represented plaintiff and the union.[12]

Even if the contention otherwise had merit, it is unjustified here because the summation was based upon evidence which was elicited in cross-examination of plaintiff and his witnesses, all without objection by plaintiff's counsel. The evidence, therefore, was in the record and accordingly was a legitimate subject for comment in the summation to the jury.

On the merits, the evidence elicited on cross-examination went to the credibility of the witnesses. One witness, a long-shoreman, testified on cross-examination that it was in the discussion of his own claim with another member of the same law firm that he was reminded of the facts relating to plaintiff's claim. Another witness, who is plaintiff's cousin, had three suits then pending against various steamship companies in which he was represented by the same law firm. Still another witness was represented by the same law firm in two suits which he had pending against steamship companies. He acknowledged that he came to court to testify without a subpoena on receiving a telephone call from plaintiff's counsel at 5:45 o'clock that morning.

In these circumstances, where the credibility of plaintiff's version of the accident and his claim of injury were the paramount issues, it was appropriate for defendant to show that there existed a solidarity of the witnesses with the plaintiff. Their identification of interest with him was not only as members of the same union but also as claimants injured while working on the waterfront who had actions pending against defendants similarly situated, and all of them were represented by the same counsel, with whom at least on occasion, discussion of one man's claim spilled over into discussion of his role as a witness in plaintiff's suit. The strength of this community of interest was shown by the evidence of the prompt appearance in court of one of the witnesses on counsel's informal, last minute summons. All this went to the question of the partiality or disinterestedness of the witnesses and was properly received into evidence. In any event, since the evidence was received without objection, it was proper to argue that the jury should consider it in weighing the credibility of the witnesses.

The judgment of the district court will be affirmed.

---

12. Inflammatory and biased appeals by counsel generally are discussed in Annot., 78 A.L.R. 1438 (1931).