**Edwin FINLEY, Plaintiff,**

v.

**NATIONAL RAILROAD PASSENGER CORPORATION, a/k/a Amtrak, Defendant.**

**No. Civ.A. 95–3594.**

United States District Court, E.D. Pennsylvania.

March 23, 1998.

G. Sander Davis, Davis and Myers, Philadelphia, PA, Dean I. Orloff, G. Sander Davis & Assoc., Philadelphia, PA, William L. Myers, Jr., Davis and Myers, Philadelphia, PA, Gerard J. Martillotti, Trial Counsel, Davis and Myers, Philadelphia, PA, for Edwin Finley, plaintiff.

Richard A. Kraemer, Trial Counsel, Christopher J. Hoare, Marshall, Dennehey, Warner, Coleman and Goggin, Philadelphia, PA, for National Railroad Passenger Corporation, a/k/a Amtrak, defendant.

### MEMORANDUM

LOWELL A. REED, Jr., District Judge.

After the opening statement by counsel for the defendant, National Railroad Passenger Corporation, a/k/a Amtrak ("Amtrak"), plaintiff Edwin Finley ("Finley") made this oral motion for a mistrial based on references defense counsel made to evidence that Finley told an examining doctor that he intended to apply for a disability pension and that Finley in fact has retired and has applied for and is receiving a disability pension, implying that getting his pension was Finley's motivation for establishing his disability. Based on the reasons given below, the motion for mistrial was granted in an Order read from the bench on March 18, 1998. This memorandum serves as an explanation of the reasoning of the Court in granting the motion.

## I. BACKGROUND

This is a case under the Federal Employers' Liability Act ("FELA"). Finley, a conductor for Amtrak, alleges that he was injured when a passenger, Thomas Haggerty ("Haggerty"), threw his knapsack at the conductor's window because he was frustrated at not being allowed to board a train as it was leaving the station, knocking the window out of its grommets. The window hit Finley in the face and knocked him to the ground, he alleges cognitive and psychological injury from this event. Amtrak argues that it was not negligent in that any injury suffered by Finley was due to the independent criminal assault by Haggerty and alternatively, that Finley suffered no injury from this accident. In addition, Amtrak contends that Finley was already suffering from degenerative arthritis which affected his hips, neck, and back before this accident occurred. Amtrak has joined Haggerty as a third party defendant.

This case was called for trial on Monday, March 16, 1998 and a jury was selected. On Tuesday, March 17, 1998, each counsel gave his opening statement. After counsel for Amtrak gave his opening statement and the jury had been excused for a morning recess, Finley objected to the references to Finley's disability pension in the opening statement of Amtrak and made a motion for a mistrial.

The Court subsequently allowed both sides to submit case law on this issue and heard oral argument from both counsel.[1] Finley argued that evidence of a plaintiffs pension in a FELA case was inadmissible because its prejudicial effect outweighed the probative value and that the introduction of this information in the opening statement was grounds for a mistrial. Amtrak submitted argument and a memo to the Court explaining that the reference to Finley's pension was not offered as evidence to mitigate damages or as evidence of malingering on the part of Finley,

---

1. Counsel for Finley provided this Court with case law supporting his motion for a mistrial after the midday recess on March 17, 1998. Because Counsel for Amtrak did not have legal authority to cite to the Court at that time, the Court excused the jury for the day so that Amtrak could provide cases to the Court. The parties returned in the latter part of the afternoon, at which time defense counsel provided the court with a memorandum and case law. Oral arguments were held after the time at which a jury would normally be excused for the day. Thus, the jury had been instructed to return to the courtroom on March 18, 1998, as a final ruling on the motion had not been made.

but that it was "admissible because the plaintiff made an admission in a vocational evaluation which is relevant to state of mind and as an explanation of why he would make a claim of mental impairment and to show he in fact had none." The defense claimed that Finley expressed his motivation to feign psychiatric disability in order to obtain disability pension benefits to his examining psychologist, Dr. Primavera, which was evidenced in a report dated October 23, 1995. The portion of the report of Dr. Primavera that Amtrak wanted to introduce into evidence and to which counsel referred in his opening statement read as follows: "[Finley] is currently disabled from all types of work and he is considering applying for disability retirement."

On March 18, 1998, after consideration of the case law and oral arguments of the parties as well as a review of the video transcript of the opening statement of Amtrak, this Court granted the motion for a mistrial.

The relevant portions of Amtrak's opening statement were as follows:

> But [Finley] also had twenty-eight years in on the railroad ... and he was up to twenty-eight years and in two more years he gets a fill pension regardless of his age, but he can't get the full pension until he's sixty-two. So here's a man almost qualified for a full pension, but he has to wait to sixty-two and his hips are starting to hurt him.

After informing the jury that an examining doctor advised Finley that he was able to return to work, defense counsel continued:

> But he doesn't go back to work. He doesn't go back to work because he knows and he starts talking about, "I can get my pension, I can be disabled, and I can get my full pension without working to sixty-two right now," and he discovers this and starts ruminating about this and he tells somebody in October of 1995, "I can get my pension if I can be disabled." And in fact that's what he does. He gets a pension. He gets his full pension, not working to sixty-two, but retiring at that point.

Defense counsel informed the jury that Finley's counsel recommended that he have a psychiatric evaluation, but that the first examining psychiatrist did not diagnose any psychological problems.

> [Plaintiffs counsel] sends him to see another psychiatrist. "Let's get a different opinion; that's not a good way to do it." Mr. Finley wants to get his disability pension and actually what happens is because his degenerative arthritis, unfortunately for him, progresses to the point that it is really bothering his hips, he has a hip replacement and the hip replacement is what causes him to be completely unable to be a railroad conductor. He's offered jobs as a ticket seller, but once you get a pension, you don't want to go back. He's got his full pension. He's totally disabled according to the rules of the railroad retirement board.

## II. STANDARD FOR GRANTING A MISTRIAL

The decision to grant a motion for a mistrial is left to the broad discretion of the district court. *See Fineman v. Armstrong World Industries, Inc.,* 980 F.2d 171, 207 (3d Cir.1992), *cert. denied,* 507 U.S. 921, 113 S.Ct. 1285, 122 L.Ed.2d 677 (1993); *Reed v. Philadelphia, Bethlehem & New England Railroad,* 939 F.2d 128, 133 (3d Cir.1991) ("In matters of trial procedure such as that involved here, the trial judge is entrusted with wide discretion because he is in a far better position than we to appraise the effect of the improper argument of counsel."). "Where a contention for a new trial is based on the admissibility of evidence, the trial court has great discretion ... which will not be disturbed on appeal absent a finding of abuse." *Threadgill v. Armstrong World Industries,* 928 F.2d 1366 (3d Cir.1991) (quoting *Link v. Mercedes–Benz of North America, Inc.,* 788 F.2d 918, 921 (3d Cir.1986)). This discretion also applies to a decision by a judge that a curative instruction to the jury is insufficient to remedy the situation. *See Fineman,* 980 F.2d at 207 ("Thus we will defer to the district court's judgment that its curative instructions during the summation were insufficient to expunge the prejudicial impact of plaintiffs' trial counsel's closing remarks.").

While not all improper remarks 61 counsel warrant a mistrial, the test laid out by the Court of Appeals for the Third Circuit is "whether the improper assertions have made it 'reasonably probable' that the verdict [would be] influenced by prejudicial statements." *Id.* (quoting *Draper v. Airco, Inc.*, 580 F.2d 91, 97 (3d Cir.1978) (holding that the refusal of a district court to grant a new trial because of prejudicial remarks made by counsel in his closing argument was reversible error despite the curative instruction given by the district court)).

## III. ADMISSIBILITY OF EVIDENCE OF A PLAINTIFF'S PENSION BENEFITS IN A FELA CASE

The admissibility of evidence of Finley's disability pension is governed by *Eichel v. New York Cent. R. Co.*, 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). In *Eichel,* also a FELA case, the defendant wanted to use evidence of the plaintiffs pension to show the plaintiff's motive for not continuing to work. *Id.* 375 U.S. at 254–55. The Supreme Court held that the district court properly excluded the evidence of the pension because the likelihood of misuse by the jury clearly · outweighed the value of such evidence. *Id.* at 255. The evidence was not only inadmissible under the collateral source rule, which prohibits the admission of evidence of payments from collateral sources, but it was also inadmissible to show malingering on the part of the plaintiff. The Court noted "that there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension." *Id.*

Indeed, in *Tipton v. Socony Mobil Oil Co.*, 375 U.S. 34, 37, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963), the trial court excluded evidence of receipt of collateral benefits by plaintiff in both the damage and liability phases of the trial. The Supreme Court in agreeing with the trial court noted that this type of evidence would also place undue emphasis on the availability of the collateral benefits in the jury's ultimate determination of whether the defendant was liable to plaintiff. *See also Reed,* 939 F.2d at 134 (describing *Tipton* and noting that the *Tipton* Court rejected the argument by defense counsel that because no damages were awarded by the jury, the evidence of receipt by plaintiff of workers' compensation benefits was harmless error).

In *Lee v. Consolidated Rail Corporation,* No 94–6411, 1995 WL 734108, *3 (E.D.Pa. Dec.5, 1995), the defendant filed a motion for a new trial after judgment was entered against it on the grounds that evidence of the plaintiffs railroad retirement benefits was excluded. The defendant 'argued that the evidence 'was admissible because it showed that the plaintiff had an incentive to retire early at age sixty-two instead of working until sixty-five and that this evidence was crucial because the calculation of lost earnings ·depended on the length of time that the plaintiff intended to work. *Id.* at *4. The court excluded this evidence because the prejudicial effect substantially outweighed its probative value. Relying on *Eichel* and *Tipton,* the court denied the motion for a new trial on this ground noting that "indeed to have taken a different course would have been error." *Id.* at *6. The court also noted that cases following *Eichel* had held that "evidence of collateral source benefits is not subject to a balancing-of-the-factors analysis under Federal Rule of Evidence 403, but must be categorically excluded." *Id.* at *4 (citing *Sheehy v. Southern Pacific Transportation Co.*, 631 F.2d 649 (9th Cir.1980) and *Page v. St. Louis Southwestern Railway Co.*, 349 F.2d 820 (5th Cir.1965)).

## IV. ANALYSIS

The dictates of *Eichel* and its progeny are clear: Under the facts of this case, this Court is not permitted to balance the prejudicial effect against the probative value of the evidence pursuant to Federal Rule of Evidence 403; evidence of plaintiff's receipt of pension benefits is prejudicial as a matter of law.[2] The Court in *Tipton* indicated that

---

2. Even if *Eichel* were not dispositive of this issue and this Court were free to balance the probative value of the evidence against its prejudicial effect under Federal Rule of Evidence 403, I find that the prejudicial effect outweighs the probative value and the balance would tip against admissibili-

statements about a plaintiffs pension may not only effect the jury's award of damages but also its ultimate determination of the issue of liability. I find that liability is a very hotly contested issue in this case,[3] and thus, I conclude that the opening statement of Amtrak made it highly likely and thus more than reasonably probable that the verdict would be influenced by the prejudicial statements.

In addition, I conclude that a curative instruction to the jury would not have alleviated the prejudice to Finley.[4] A jury with information of receipt by plaintiff of pension benefits may not only be influenced to offset the damages it awards to the plaintiff but may also be influenced to find no liability on the part of the defendant. Once this prejudicial cat is out of the bag, it is difficult for a jury's verdict to be unaffected by this information. Moreover, this was not a case in which an inadvertent slip of the tongue by counsel resulted in prejudicial information getting to the jury. Counsel for Amtrak purposefully brought up the subject of Finley's pension three different times during his fifteen minute opening argument. Counsel clearly intended to bring the fact of Finley's pension to the jury's attention; indeed, it was a dominant theme running throughout the opening statement.

The cases cited by Amtrak are inapposite to this issue and largely do not stand for the propositions for which they were cited in the memorandum submitted by Amtrak. In *Gladden v. P. Henderson & Co.*, 385 F.2d 480 (3d Cir.1967), evidence of the plaintiffs workmen's compensation benefits was admissible to rebut the plaintiffs testimony that he had to go back to work to catch up on his bills and support his family. *See id.* at 482. Similarly in *Lange v. Missouri Pacific Railroad,* 703 F.2d 322 (8th Cir.1983), the court held that it was not an abuse of discretion to

admit evidence of the plaintiffs disability benefits to rebut the plaintiff's testimony that he went back to work because he "had to support his family and had no savings or disability income to fall back upon." *Id.* at 323–24. In both *Gladden* and *Lange,* the plaintiffs brought up the subject of collateral source payments in their testimonies, in effect, opening the door to this type of evidence. Finally, in *De Medeiros v. Koehring & Co.*, 709 F.2d 734 (1st Cir.1983), evidence of the plaintiffs pension was admitted, but the court, applying state law, distinguished *Eichel* on the basis that the First Circuit had not extended *Eichel* to diversity negligence cases.

Even if this Court were persuaded, and it is not, that the cases Amtrak cited were on point or even analogous, counsel for Amtrak in his opening statement went way beyond the purported permissible scope of these cases and way beyond the position that he later argued to this Court. In *Gladden* and *Lange,* evidence of the plaintiffs' pensions was admissible to rebut statements made by plaintiffs. Amtrak argued here that evidence of Finley's intent to apply for a pension would show his state of mind in that Finley wanted to establish a disability because he wanted to receive pension benefits; however, Amtrak's counsel went further in his opening statement to say that Finley, in fact, applied for a pension, that he was receiving pension benefits, and that he was retired from the railroad. It was apparent from defense counsel's mantra in his opening statement that he intended his statements about Finley's pension benefits to be a frontal attack to torpedo the merits of Finley's entire case.

Federal Rule of Evidence 103(c) mandates that "proceedings shall be conducted, to the extent practicable, so as to prevent inadmissible evidence from being suggested to the

---

ty of this evidence. Further, as the *Eichel* court predicted would occur in cases like this, Amtrak has informed this Court that it has abundant evidence to show that Finley is not psychologically disabled which does not carry the prejudicial baggage of the evidence of Finley's receipt of pension benefits.

3. The rather bizarre scenario of a disgruntled passenger being allowed on the platform after the train was starting to leave the station and

throwing a bookbag missile in anger at the window of the passenger car hardly conjures up a strong case of negligence by the railroad.

4. In addition, after Finley argued to this Court that a curative instruction would not be sufficient to remedy the situation, Amtrak did not request or suggest an instruction that the Court might give which would counteract its statements.

jury by any means, such as making statements or offers of proof or asking questions in the hearing of the jury." By revealing this information to the jury during the opening statement, defense counsel circumvented the wisdom of this rule and precluded this Court from conducting a hearing on the admissibility of this evidence outside of the hearing of the jury. Indeed, counsel for Amtrak cut off any opportunity to properly use this evidence later as rebuttal in the event Finley opened the door to this evidence in his testimony. Had this Court been able to conduct such a hearing outside the hearing of the jury, the waste of judicial, private, and public resources resulting from this mistrial would have been avoided. The performance of defense counsel was wrong, reckless, and disappointing to this Court.

## V. CONCLUSION

For the foregoing reasons, the oral motion for a mistrial was granted. For completeness, I have reduced the Order I entered from the bench on March 18, 1998 to writing, and it is attached hereto.

### *ORDER*

**AND NOW,** this 23th day of March, 1998, upon consideration of the oral motion of plaintiff Edwin Finley ("Finley") for a mistrial following the opening statement of defendant National Railroad Passenger Corporation, a/k/a Amtrak ("Amtrak") on March 17, 1998, in which counsel made reference to evidence that Finley told an examining doctor that he intended to apply for a disability pension and that Finley in fact applied for and is receiving a disability pension and has retired demonstrating plaintiffs motivation to establish his disability from working, and the arguments of counsel on the admissibility of this evidence, having found and concluded that:

1. Evidence of Finley's disability pension is not admissible at trial because the prejudice to Finley by the introduction of this evidence outweighs the probative value to

Amtrak as a matter of law. *See Eichel v. New York Central Railroad,* 375 U.S. 253, 254–55, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963); *Lee v. Consolidated Rail Corporation,* No 94–6411, 1995 WL 734108, *3 (E.D.Pa. Dec.5, 1995);[1]

2. The prejudice to Finley from the anticipatory introduction of this evidence by Amtrak in its opening statement cannot be alleviated by a curative instruction to the jury;

it is hereby **ORDERED** that the motion for mistrial is **GRANTED.**

---

1. Even if *Eichel* were not dispositive of this issue and this Court were free to balance the probative value of the evidence against its prejudicial effect under Federal Rule of Evidence 403, I find that

the prejudicial effect outweighs the probative value and the balance would tip against admissibility of this evidence.