954 A.2d 514 (2008)
402 N.J. Super. 372
Dmitriy KOTLER, Plaintiff-Appellant,
v.
NATIONAL RAILROAD PASSENGER CORPORATION ("AMTRAK"), Defendant-Respondent.
No. A-5985-06T2.
Superior Court of New Jersey, Appellate Division.
Argued April 22, 2008.
Decided August 29, 2008.
*515 Samuel J. Rosenthal, argued the cause for appellant (Barish Rosenthal, attorneys, Philadelphia, PA; Rudolph V. DeGeorge, II, on the brief).
Gerald T. Ford, Newark, argued the cause for respondent (Landman Corsi Ballaine & Ford, attorneys; Mr. Ford and Natalie Garcia, on the brief).
Before Judges SKILLMAN, WINKELSTEIN and LeWINN.
LeWINN, J.S.C. (temporarily assigned).
Plaintiff appeals from a judgment in favor of defendant National Railroad Passenger Corporation (Amtrak) entered upon a jury verdict in a personal injury action brought under the Federal Employers' Liability Act (FELA), 45 U.S.C.A. §§ 51 to 60. Following a two-day trial, the jury returned a verdict finding that Amtrak was not negligent.
On appeal, plaintiff challenges the admission of evidence that he received collateral source benefits during his disability period, as well as defense counsel's summation comment on that evidence. Plaintiff contends he did not "open the door" to the admission of such evidence. He claims the erroneous admission of collateral source benefits evidence impermissibly tainted the jury's verdict to a degree warranting reversal. We agree. Consequently, we reverse and remand for a new trial.
Plaintiff had worked for Amtrak as an electrician since 1994. On July 10, 2003, plaintiff was assigned to service trains at an Amtrak facility; this assignment included inspecting the Special Departure Units (SDU) on the trains to insure proper functioning.
While inspecting a train, plaintiff noticed that the glass door to an SDU was broken and needed to be replaced. He tried, unsuccessfully, to remove a plug on the SDU with his hand. At the suggestion of his supervisor, plaintiff went to the office of Patrick Lockhart, an Amtrak electrical foreman, to obtain a tool known as a "channel lock." Plaintiff testified that Lockhart told him someone had taken the channel lock and never returned it. Because *516 the train on which he was working was "supposed to leave approximately in an hour[,]" plaintiff felt he was under a time constraint and returned to work on the SDU without the channel lock.
The SDU was in a locked position, and plaintiff testified that it was necessary to apply "close to 20 pounds to release it." While attempting to unlock and turn the plug, plaintiff sprained his thumb. He was out of work until December 8, 2003, at which time he returned as an electrical technical advisor, which did not require him to work with tools.
Plaintiff claimed that Amtrak was liable because the SDU was poorly designed and Amtrak failed to provide him with the proper tool to complete the job, thereby causing his injury. Plaintiff presented no liability expert at trial.
Plaintiff brought an in limine motion "to preclude evidence of benefits which w[ere] received by plaintiff through a short-term disability policy, a railroad retirement board." In addition, plaintiff's counsel requested that "if counsel is going to cross-examine [plaintiff] based on a railroad retirement board document, that there be no reference of the fact that it's a railroad retirement document. And that. . . any evidence as to railroad retirement board be . . . redacted."
Defense counsel concurred in plaintiff's motion, reserving the right to pursue that line of questioning if plaintiff "opened the door."
The court ruled:
The motion is granted unless the door is open. If the door is open[ed] and you consider that the door has been open[ed], before the evidence can be submitted to the jury, we will have a discussion at sidebar and a ruling.
Thereafter, during plaintiff's direct examination, the following colloquy occurred:
Q. Now when you did go back to work at Amtrak  by the way, did you get paid during that time, the time that you were out (Indiscernible)?
A. I received 
Q. Let me ask you this. How much were you paid during that time?
A. It was alternative pay of $56 
Q. No, no, no, no. How much were you  what was your rate of earnings as an electrician when you got hurt?
A. If I'm not mistaken, maybe (Indiscernible) five.
Q. And did you get paid that rate between July 10th 2003 and December 8th  I'm sorry  December 8th 2003?
A. No.
During cross-examination, this colloquy occurred:
Q. During the course of your treatment with Dr. Ravitch I believe you actually testified that he return [sic] to work as an electrician with modified duties. Do you recall that?
A. Yes.
Q. By the way, a period of time that you actually returned to work as an electrician in a modified role you were paid your same salary. Is that correct?
A. No.
Q. What were you paid?
A. I got disability benefits from the time 
Q. You got disability benefits, okay. 
A. No, I (Indiscernible) 
Q. No, no. Where did you get disability benefits?
[PLAINTIFF'S COUNSEL]: (Indiscernible) [1]

*517 THE COURT: It's okay, it's okay. Just answer her questions. Your attorney has the opportunity to redirect and you will give the explanation then. It's going to come out. So go ahead.
[DEFENSE COUNSEL]: Thank you, Your Honor.
Q. From whom did you receive disability benefits?
[PLAINTIFF'S COUNSEL]: Objection.
THE COURT: I'll see you at sidebar.
(Sidebar conference)
[PLAINTIFF'S COUNSEL]: Judge, there's a motion precluding any mention of disability benefits. And if that's  he blurted it out, it doesn't mean that he can be cross-examined about it.
[DEFENSE COUNSEL]: He opened the door. The door is open, (Indiscernible) it was open before. And I'll get there (Indiscernible).
THE COURT: (Indiscernible) opened the door there's got to be some explanation, but you can't (Indiscernible) disability now. So it's open 
[PLAINTIFF'S COUNSEL]: And I'll request a cautionary instruction later if I think it's appropriate because it may be highlighting it, but 
THE COURT: We'll discuss that, we'll discuss that 
[PLAINTIFF'S COUNSEL]: Okay.
(sidebar conference concluded)
Q. Sir, from whom did you receive these benefits, the disability benefits from?
A. Let me clarify. (Indiscernible) time I start receiving approximately two weeks after the accident, which supposed to be returned back to railroad retirement.
Q. Sir you received railroad retirement (Indiscernible). How much did you receive an hour?
A. $56 (Indiscernible) after two weeks. The first 
Q. And how  I'm sorry, go ahead and finish.
A. The first two weeks was not paid as the railroad retirement (Indiscernible).
Q. And for how long a period of time after that did you receive those benefits?
A. I believe they stopped before  I don't know exactly what the rules  the last week was not paid. The last week  they (Indiscernible) basis. If you have like only two days or three days, so they eliminate those (Indiscernible). So I don't know exactly till what date. Approximately  we can check on the record. Approximately maybe (Indiscernible) I start  I came back to work.
Plaintiff's counsel did not thereafter request any cautionary instruction.
In her summation to the jury, defense counsel stated:
And by the way, ladies and gentlemen, the evidence is also clear that that past wage loss (Indiscernible). You heard from plaintiff himself that he was actually receiving railroad retirement or disability while he was out. He was receiving money from the railroad . . . in those five months that he was out from July of '03 to December '03.
Plaintiff did not object to these comments.
The FELA is the exclusive remedy available to injured railroad employees. 45 U.S.C.A. § 51; Polizzi v. N.J. Transit, 364 N.J.Super. 323, 332 n. 2, 835 A.2d 1241 (App.Div.2003). State courts are vested with concurrent jurisdiction with the federal courts to hear FELA cases. 45 U.S.C.A. § 56; Stevens v. N.J. Transit, 356 N.J.Super. 311, 317 n. 2, 812 A.2d 416 (App.Div.2003).
*518 The admissibility of evidence of collateral source benefits in a FELA-based negligence trial was addressed by the United States Supreme Court in Eichel v. N.Y. Cent. R.R. Co., 375 U.S. 253, 84 S.Ct. 316, 11 L.Ed.2d 307 (1963). There, a railroad employee sought damages for a permanently disabling injury incurred in the course of his employment. Id. at 253-54, 84 S.Ct. at 316-17, 11 L.Ed.2d at 308. The defendant sought to introduce evidence that the plaintiff was receiving monthly disability pension payments under the Railroad Retirement Act, 45 U.S.C.A. § 228b(a)(4). Ibid. The defendant offered this evidence for the purpose of impeaching the plaintiff's testimony as to his motive for not returning to work and as to the permanency of his injuries. Ibid.
The trial court excluded the evidence pursuant to the plaintiff's objection. Ibid. The Supreme Court affirmed, noting:
"The Railroad Retirement Act is substantially a Social Security Act for employees of common carriers. . . . The benefits received under such a system of social legislation are not directly attributable to the contributions of the employer, so they cannot be considered in mitigation of the damages caused by the employer."
[Id. at 254, 84 S.Ct. at 317, 11 L.Ed.2d at 308-09 (quoting N.Y., N.H. & H.R. Co. v. Leary, 204 F.2d 461, 468 (1st Cir.), cert. denied, 346 U.S. 856, 74 S.Ct. 71, 98 L.Ed. 370 (1953)).]
In holding evidence of such benefits inadmissible, the Supreme Court stated:
In our view the likelihood of misuse by the jury clearly outweighs the value of this evidence. Insofar as the evidence bears on the issue of malingering, there will generally be other evidence having more probative value and involving less likelihood of prejudice than the receipt of a disability pension. Moreover, it would violate the spirit of [the FELA] if the receipt of disability benefits under the Railroad Retirement Act . . . were considered as evidence of malingering by an employee asserting a claim under [the FELA]. . . . It has long been recognized that evidence showing that the defendant is insured creates a substantial likelihood of misuse. Similarly, we must recognize that the [plaintiff]'s receipt of collateral social insurance benefits involves a substantial likelihood of prejudicial impact. We hold therefore that the District Court properly excluded the evidence of disability payments.
[Id. at 255, 84 S. Ct. at 317, 11 L.Ed.2d at 309.]
The Supreme Court reached a similar result in an analogous case, Tipton v. Socony Mobil Oil Co., Inc., 375 U.S. 34, 84 S.Ct. 1, 11 L.Ed.2d 4 (1963). The principal issue was whether the plaintiff was a seaman entitled to coverage under the Jones Act, 46 U.S.C.A. § 688, for work-related injuries. Id. at 34-35, 84 S.Ct. at 2, 11 L.Ed.2d at 5. The District Court admitted evidence at trial that the plaintiff had received compensation benefits under the Longshoreman's and Harbor Worker's Compensation Act, 33 U.S.C.A. §§ 901 to 950. Ibid. The United States Court of Appeals for the Fifth Circuit found the admission of evidence of those other compensation benefits to be harmless error. Ibid. In reversing, the Supreme Court held:
We do not agree that on the record in this case the error may be regarded as harmless. There can be no doubt that the evidence of other benefits was pressed upon the jury. . . .
. . . .
We disagree with the suggestion of the Court of Appeals that the prejudicial effect of the evidence of other compensation would be restricted to the issue of *519 damages and would not affect the determination of liability. That suggestion ignores that the evidence was presumably considered without qualification as bearing on a basic fact essential to liability.
[Id. at 35-37, 84 S.Ct. at 2-3, 11 L.Ed.2d at 5-6.]
The federal courts have followed the Supreme Court's strong condemnation of the admission of collateral source benefits evidence in FELA trials. See Green v. Denver & Rio Grande W. R.R. Co., 59 F.3d 1029, 1033-34 (10th Cir.), cert. denied, 516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995), holding:
The major reason for excluding collateral source evidence is the concern that juries will be more likely to find no liability if they know that plaintiff has received some compensation.... "This concern compels us to reject [the] suggestion that, even if introduction of post-accident benefits was error, it had no effect on the jury's finding of no negligence and therefore constituted a form of harmless error."
[(quoting Phillips v. Western Co. of N. Am., 953 F.2d 923, 930 (5th Cir.1992)).]
In Reed v. Philadelphia, Bethlehem & New England R.R. Co., 939 F.2d. 128, 129 (3rd Cir.1991), the trial judge had ruled collateral source benefits evidence inadmissible in limine. Nonetheless, defense counsel commented on the plaintiff's receipt of such benefits in his summation. Ibid. In reversing a verdict for the defendant, the Third Circuit Court of Appeals noted that the trial judge's in limine ruling was "a decision in accord with existing law." Id. at 134. The Court of Appeals noted that it "cannot disregard the teachings of the Supreme Court in cases such as Tipton . . . and Eichel[,]" and concluded: "[U]nder the current state of the law we cannot say the error was harmless." Ibid.
In sum, the prohibition against admitting collateral source benefits evidence in a FELA trial is necessitated by the "likelihood of misuse [of such evidence] by the jury[, which] clearly outweighs the value of this evidence." Eichel, supra, 375 U.S. at 254, 84 S.Ct at 317, 11 L.Ed.2d at 309.
Nevertheless, the federal courts have permitted inquiry into collateral source benefits "when the plaintiff makes specific reference to collateral source payments on direct examination . . . [on] `matters affecting the credibility of the witness.'" Lange v. Mo. Pac. R.R. Co., 703 F.2d 322, 324 (8th Cir.1983) (citation omitted); see also Gladden v. P. Henderson & Co., 385 F.2d 480, 483-84 (3rd Cir.1967), cert. denied, 390 U.S. 1013, 88 S.Ct. 1262, 20 L.Ed.2d 162 (1968), holding collateral source benefits evidence admissible to rebut the plaintiff's testimony that he was compelled to return to work early because he was in financially dire straits. Under these circumstances, the Gladden court held:
Defendant was not required to leave this testimony unchallenged and had the right to ask plaintiff on cross-examination whether he had received financial assistance as affecting the credibility of his assertion. To have forbidden such cross-examination would have conferred on plaintiff the unparalleled right to give testimony on direct examination with immunity from inquiry on cross-examination. This is what distinguishes the present case from Eichel v. New York Central Railroad Co. . . . .
[Id. at 483.]
Thus, the federal courts have recognized that admitting collateral source benefits evidence to impeach a plaintiff's claims of financial distress in an effort to garner jury sympathy does not violate the United States Supreme Court's prohibition against such testimony in Eichel. A plaintiff *520 making such a claim will be deemed to have "opened the door" to permit questions related to collateral source benefits. Ibid.
We conclude that plaintiff did not "open the door" either by his direct testimony or on cross-examination. Plaintiff did not assert a claim of financial distress; nor did his statements call into question the credibility of his testimony regarding the accident or the extent of his injuries. Rather, his answers on direct examination were in response to his attorney's inquiry into whether plaintiff received his hourly earning rate between July and December 2003. Therefore, plaintiff's testimony on direct examination did not have the capacity to "mislead[ ] the jury on some issue in the case" thereby rendering cross-examination "necessary to rebut th[at] testimony." Lange, supra, 703 F.2d at 324. Nor did plaintiff's testimony "br[ing] into the case an additional, affirmative element" by describing financial hardship during his disability period. Gladden, supra, 385 F.2d at 483. Thus, defendant was not entitled to challenge plaintiff's testimony by eliciting otherwise inadmissible evidence.
Under the circumstances, we cannot say with any degree of certainty that the admission of that evidence, compounded by defense counsel's summation comments, did not impermissibly taint the jury's verdict. Therefore, we conclude that plaintiff is entitled to a new trial.
Reversed and remanded for a new trial.
NOTES
[1] Counsel certified that at this point in the transcript he said, "Objection."