**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 14-3281
_____

JAMES MEALS

v.

PORT AUTHORITY TRANS HUDSON CORP.,

Appellant
_____

Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 2:12-cv-02628)
District Judge: Honorable Jose L. Linares
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
April 16, 2015
_____

Before: AMBRO, VANASKIE, and SHWARTZ, *Circuit Judges*.

(Opinion Filed:  July 8, 2015)
_____

OPINION[*]
_____

VANASKIE, *Circuit Judge*.

        After James Meals was injured on the job, he prevailed in a negligence action

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7
does not constitute binding precedent.

against his employer, the Port Authority Trans-Hudson Corporation ("PATH"). The District Court denied PATH's subsequent motion for a new trial, and PATH challenges this ruling on appeal. For the reasons that follow, we will affirm.

I.

On February 10, 2011, Meals was working for PATH as a trackman in a New Jersey railway tunnel. While attempting to dislodge a pin spike from the tracks with a claw bar, Meals was injured when an unidentified object struck him in the right eye. As a result of the incident, he missed work and underwent multiple medical procedures, including the suturing of his right iris.

The following year, Meals brought suit against PATH in the District of New Jersey under the Federal Employer's Liability Act ("FELA"), 45 U.S.C. § 51 *et seq.*, alleging that PATH was negligent in failing to implement procedures necessary to minimize the risk of injury during the pin spike pulling process. PATH denied culpability and maintained that Meals's own negligence caused his injury in whole or in part. Additionally, PATH argued that Meals's recovery should be limited because he failed to mitigate his damages (by disobeying doctor's orders and reinjuring his eye while practicing mixed martial arts).

The case went to trial in February 2014. Following the close of evidence, the District Court instructed the jury on the applicable legal principles—including comparative negligence and the duty to mitigate damages—and provided a special verdict form agreed to by the parties. Responding to the verdict form's interrogatories,

2

the jury concluded that PATH was negligent, that this negligence caused Meals's injuries, and that PATH had failed to prove that Meals was negligent. The jury also found that $3.75 million would fairly and reasonably compensate Meals.

PATH responded with a motion for a new trial, or in the alternative, remittitur of the jury award. Among other things, PATH argued that the District Court erred by: (1) answering a jury question about the verdict form without reiterating its prior instruction regarding the duty to mitigate damages; (2) permitting Meals's treating physician to offer an opinion on the likelihood he would develop glaucoma; and (3) forbidding questioning about the payments Meals received from PATH while on medical leave. PATH also contends that the jury's verdict should be set aside based upon purportedly improper remarks made by Meals's counsel during his closing argument. The District Court denied PATH's motion and entered judgment for Meals. PATH timely appealed.

## II.

The District Court had jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291. We review the denial of a motion for a new trial for abuse of discretion. *United States v. Georgiou*, 777 F.3d 125, 143 (3d Cir. 2015). A district court abuses its discretion when its "'decision rests upon a clearly erroneous finding of fact, an errant conclusion of law[,] or an improper application of law to fact.'" *Id.* (citation omitted).

## III.

## A.

3

PATH contends that the District Court abused its discretion by answering a jury question concerning Meals's alleged negligence without reiterating its prior instruction regarding Meals's duty to mitigate his damages. We will set aside a judgment for failure to provide a supplemental jury instruction only if the decision was "'arbitrary, fanciful or clearly unreasonable.'" *United States v. Jackson*, 443 F.3d 293, 297 (3d Cir. 2006) (quoting *Stich v. United States*, 730 F.2d 115, 118 (3d Cir. 1984)).

During the course of its jury charge, the District Court properly addressed both comparative negligence and the duty to mitigate damages. After instructing the jury and permitting counsel to make closing arguments, the District Court provided the jury with a special verdict form agreed to by the parties. The form's first three interrogatories addressed the issues of PATH's negligence and damages—i.e., whether PATH was negligent, whether Meals's injuries resulted in whole or in part from that negligence, and what amount of damages would reasonably compensate Meals. The remaining interrogatories addressed comparative negligence—whether Meals was negligent, whether his injuries resulted in whole or in part from his negligence, and the percentage of negligence attributable to each party.

During deliberation, the jury sent a note requesting clarification of the fourth interrogatory, which addressed the question of whether Meals had been negligent. Specifically, the jury inquired whether that question "pertain[s] only to the original incident on or about February 11, 2011?" App. at 120. When the District Court discussed this with the parties, Meals suggested that the answer is "just yes." App. at

4

776.  PATH requested that, "[f]or clarification sake," the District Court "read the failure to mitigate instruction as well."  App. at 776.  Meals disagreed, arguing that the fourth interrogatory dealt with the separate issue of comparative negligence, and that repeating the prior charge about mitigation of damages would unduly confuse the jurors.  The District Court sided with Meals, answered the jury's question in the affirmative, and reminded the jury that "what we are dealing with" is "whether or not [the] defendant proved that the plaintiff was in any way negligent" during the initial incident that resulted in his eye injury.  App. at 778.  After returning to deliberate, the jury concluded that PATH had not established that Meals was negligent, and returned a plaintiff's verdict.

We discern no abuse of discretion by the District Court.  During its initial charge, the Court properly instructed the jury on the distinct concepts of comparative negligence and mitigation of damages.  When subsequently asked by the jury for clarification of the interrogatory regarding Meals's alleged negligence, the Court provided the requested guidance and declined to reiterate a prior instruction on a separate issue.  PATH thus falls well short of establishing that the District Court's actions were "'arbitrary, fanciful or clearly unreasonable.'"  *Jackson*, 443 F.3d at 297 (quoting *Stich*, 730 F.2d at 118).

B.

PATH asserts that the District Court erred by permitting Dr. Scott Walsman, Meals's treating ophthalmologist, to testify that Meals faced an increased risk of

5

developing glaucoma as a result of the eye trauma he suffered.[1]  In particular, PATH

claims that it was unfairly surprised by Dr. Walsman's trial testimony since his pretrial

disclosures and treatment records made no mention of the disease.  PATH also asserts

that the testimony was unduly speculative.  Because PATH did not object on this ground

at trial, we will not entertain this argument on appeal.  *See* Fed. R. Evid. 103(a)(1)

(requiring a party to "timely object[] or move[] to strike" and "state[] the specific ground,

unless it was apparent from the context").

PATH contends that it objected at trial "to Dr. Walsman's testimony as to the

possibility of future glaucoma," Appellant's Br. at 24, but the record belies this claim.

Shortly after Dr. Walsman took the stand, the District Court conducted a sidebar with

counsel regarding the permissible scope of his testimony.  The Court indicated that it

would permit Dr. Walsman to testify "to his treatment [of Meals] and the diagnosis he

made and the prognosis he made."  App. at 558.  PATH's counsel responded: "Correct.  I

just don't think he can go off on future testimony as to surgery or anything that is not in

the notes that I don't [sic] have."  App. at 558.  PATH's counsel did not raise his current

contention that Dr. Walsman's treating notes and pretrial disclosures were silent

---

[1] Dr. Walsman testified on direct examination that "[p]enetrating injuries or trauma injuries to the eye can, not necessarily, but can increase a patient's risk to glaucoma in the future."  App. at 595.  He further explained that while "all ocular injuries are different, . . . somewhere between 17 and 49 percent" of those trauma patients "will go on to get glaucoma."  App. at 595.  Dr. Walsman also stated that Meals will need to be seen by an ophthalmologist two to three times per year for the remainder of his life "[t]o be able to pick up future consequences of trauma, such as glaucoma."  App. at 596.

regarding glaucoma, nor did he object when the subject was raised by Meals's counsel or discussed by Dr. Walsman. The District Court was not required to infer that PATH objected to testimony regarding glaucoma when PATH did not press the issue.

In challenging Dr. Walsman's testimony as unduly speculative, PATH similarly claims that "[t]his prejudicial testimony, permitted over objection, should not have been permitted by the trial court." Appellant's Br. at 40. Again, the trial record lacks any objection to Dr. Walsman's testimony on these grounds. Moreover, despite PATH's contrary contention, the fact that Dr. Walsman did not claim Meals was more likely than not to develop glaucoma did not render his testimony on the subject inadmissible. Dr. Walsman explained that Meals should visit an ophthalmologist two to three times per year to guard against the risks of future complications from his eye trauma, including the risk of developing glaucoma.

## C.

PATH also seeks a new trial because the District Court prohibited it from introducing evidence of collateral benefits Meals received after he purportedly "opened the door" to such evidence during the course of PATH's cross-examination of Meals. We review the District Court's exclusion of testimony for abuse of discretion. *United States v. Fallon*, 470 F.3d 542, 546 (3d Cir. 2006).

Due to the potentially prejudicial effect of such evidence, the collateral source rule generally prohibits the introduction of evidence regarding payments made to an injured plaintiff from collateral sources, such as workmen's compensation and unemployment

7

benefits. *See Gladden v. P. Henderson & Co.*, 385 F.2d 480, 483 (3d Cir. 1967). Where, however, the plaintiff's own testimony implicates the subject of payments from a collateral source, we have held that the plaintiff may not invoke the collateral source rule to avoid cross-examination on the subject. *Id.* at 484.

During the course of cross-examination, PATH's counsel asked Meals if he had told PATH's medical staff that he was ready to return to work following medical leave in 2013. Meals responded that he was "dying to return to work." App. at 717. Asked to elaborate, Meals explained:

> Just like I stated in the beginning, I love my job for number one. Actually number one should be I need the money for my family. I didn't have any money really coming in, and I have a lot of bills to pay, and I didn't know where the next bill was going to get paid.

App. at 718. After confirming that Meals was on medical leave for 60 days, PATH's counsel stated: "PATH pays you when you are out. Isn't that correct?" App. at 718. Meals's counsel objected, arguing that the question was "[g]etting into collateral source," and that "if we are going to do it, we will have to go into the collective bargaining agreement," which governs PATH's medical leave policies. App. at 718. PATH's counsel countered that Meals "opened the door" to such questioning, and that it "goes to credibility," but the District Court sustained the objection without elaboration and instructed PATH's counsel to "[m]ove on." App. at 718.

When PATH challenged this evidentiary ruling in its motion for a new trial, the District Court explained that it had sustained Meals's objection "on the basis of the

8

collateral benefit rule." *Meals v. Port Authority Trans-Hudson*, No. 12-2628, 2014 WL 2619843, *8 (D.N.J. June 12, 2014). The District Court indicated that it was cognizant that under *Gladden* a plaintiff's affirmative testimony that he returned to work because of financial need could open the door for cross-examination for the purpose of testing his credibility. *Id.* at *9. Citing Fed. R. Evid. 403, however, the Court stated that it "nevertheless exercised its discretion in concluding that the prejudicial effect of the evidence sought to be introduced by [PATH] substantially outweighed whatever probative value such testimony would have had on the issue of [Meals's] credibility." *Id.*

Given the record as a whole, including the vigorous cross-examination conducted by PATH's counsel, we believe that the District Court's refusal to permit this single line of questioning was not an abuse of discretion. Collateral source evidence is generally inadmissible because it may induce the jury to reduce the amount of damages awarded or even deny the plaintiff an otherwise appropriate liability verdict. *See Crowther v. Consol. Rail Corp.*, 680 F.3d 95, 98–99 (1st Cir. 2012). In light of these considerations, we cannot conclude that the District Court improperly found that the danger of undue prejudice substantially outweighed the minimal probative value of this line of cross-examination.[2] Accordingly, we will not disturb the District Court's order declining to grant a new trial on this basis.

---

[2] PATH did not provide an offer of proof at the time of the objection, but it now asserts that, pursuant to the collective bargaining agreement, Meals received his full wages for the first 40 days of medical leave and half-pay for the next 20, and that he returned to work the day after his paid leave expired. Although PATH sought to

9

D.

Finally, PATH contends that a new trial is warranted because of improper comments made by Meals's counsel during the course of his closing argument. We review for abuse of discretion a district court's handling of allegations of attorney misconduct at trial, and will grant a new trial only where the improper conduct "make[s] it 'reasonably probable' that the verdict was influenced by the resulting prejudice." *Forrest v. Beloit Corp.*, 424 F.3d 344, 351–52 (3d Cir. 2005) (citations omitted).

PATH takes issue with the fact that Meals's counsel: (1) said "[s]hame on [PATH's counsel] for trying to make that kind of an argument" in response to the claim that there was no evidence of what struck Meals in the eye; (2) called PATH's assertion that there was no evidence as to whether Meals was wearing eye protection at the time of his injury "disingenuous"; (3) referred to the request by PATH's counsel that Meals put on his eye protection on the stand as a "parlor trick" that "was very O.J. like, the glove didn't fit right"; and (4) stated that the cross-examination of Meals by PATH's counsel regarding a medical record was "a great lawyer's [sic], slide it in, slide it out, slide it in, slide it out." App. at 510–11, 515, 523.

While we agree that Meals's counsel may have "crossed the line between acceptable advocacy and imprudent zeal[,] . . . our disapproval of portions of the closing

contradict Meals's testimony regarding his dire financial condition with this evidence, the fact that he returned to work the very day after his paid leave expired could actually be seen as supporting his claim.

is not enough to warrant reversal on that ground." *Dunn v. HOVIC*, 1 F.3d 1371, 1377 (3d Cir. 1993) (en banc). In civil trials, "'improper comments during closing arguments rarely rise to the level of reversible error[,]'" *id.* (quoting *Littlefield v. McGuffey*, 954 F.2d 1337, 1346 (7th Cir. 1992)), and this case does not present one of those rare instances. It is not reasonably probable that the remarks of Meals's counsel prejudiced the jury, *Forrest*, 424 F.3d at 351–52, and the District Court did not abuse its discretion in denying PATH's motion for new trial based on those remarks.[3]

## IV.

For the aforementioned reasons, we will affirm the District Court's judgment entered on June 30, 2014.

---

[3] PATH also contends that Meals's counsel impermissibly referenced PATH's wealth and financial condition. The purportedly improper statements PATH has identified, however, make no such reference. Instead, Meals's lawyer argued that PATH chose less costly but more unsafe measures for pulling spikes for the sake of efficiency and greater profits. *See* App. at 514 (asserting that "[t]he railroad very consciously chose their money over every employee's safety"). Meals's arguments concerning the motivation for PATH's actions do not warrant a new trial.